Walter J. Lack, Esq. (SBN 57550)
*wlack@elllaw.com*
Paul A. Traina, Esq. (SBN 155805)
*ptraina@elllaw.com*
Ian P. Samson, Esq. (SBN 279393)
*isamson@elllaw.com*
**ENGSTROM, LIPSCOMB & LACK**
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, California 90067-4113
Tel: (310) 552-3800 / Fax: (310) 552-9434

Brian J. Soo-Hoo, Esq. (SBN 228298)
*soohoolaw@gmail.com*
**LAW OFFICES OF BRIAN J. SOO-HOO**
601 Parkcenter Drive, Suite 105
Santa Ana, California 92705-3543
Tel: (714) 589-2252/Fax: (714) 589-2254

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PHILLIP NGHIEM, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>DICK'S SPORTING GOODS, INC., and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 8:16-cv-00097<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation of the Telephone Consumer Protection Act (47 *U.S.C.* § 227 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

407865

1

**CLASS ACTION COMPLAINT**

Plaintiff Phillip Nghiem brings this class action complaint against Defendant Dick's Sporting Goods, Inc. ("DSG") to stop Defendant's transmission of unauthorized text messages to cellular telephones and to obtain redress for all persons injured by Defendant's conduct. For his class action complaint, Plaintiff alleges as follows based upon his personal knowledge and upon information and belief, including investigation conducted by his attorneys.

## PRELIMINARY STATEMENT

1. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers against unsolicited and unconsented telephone communication. Relevant here, the TCPA prohibits unsolicited and unconsented telephone calls and text messages to wireless phones.

2. Beginning in at least 2010, Defendant DSG, in an effort to market itself to consumers, has operated a "mobile alerts" program which uses an automatic telephone dialing system to send general and non-personalized text message advertising to consumers. Under the terms of program, consumers can opt to receive text message alerts from DSG sent directly to their cell phones. Consumers may also choose to end their participation in the program at any time by texting the word "STOP" to the "short code" telephone number established by DSG for this program.

3. After previously opting-in to the DSG mobile alerts program, in December 2015 Plaintiff indicated that he no longer wished to participate by texting the word "STOP" to DSG's designated "short code." Although DSG acknowledged Plaintiff's termination of his consent to receive DSG's automated text advertisements, DSG continued to automatically and instantaneously send Plaintiff's cell phone SMS text messages containing a generic, non-personalized advertisement.

4. On behalf of himself and the proposed class (as defined below), Plaintiff seeks an injunction requiring Defendant to cease the unlawful activities alleged herein and an award of statutory or actual damages pursuant to the TCPA to himself and all members of the class, together with the costs of suit and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 *U.S.C.* § 1331, as the action arises from a federal statute, the Telephone Consumer Protection Act (47 *U.S.C.* § 227 *et seq.*). Moreover, this Court has jurisdiction under 28 *U.S.C.* § 1332, as amended by the Class Action Fairness Act of 2005.

6. This Court has personal jurisdiction over Defendant because Defendant does business in this District, is registered to do business in California (and nationwide), and a substantial number of the events giving rise to the claims alleged herein took place in California.

7. Venue is proper in this district pursuant to 28 *U.S.C.* § 1391(b) because Defendant does business in this District and a substantial number of the events giving rise to the claims alleged herein took place in this District, including the messages received by Plaintiff.

## PARTIES

8. Plaintiff Phillip Nghiem is a citizen and resident of California who resides in Orange County.

9. Defendant DSG is a Delaware corporation with its principal place of business located in Coraopolis, Pennsylvania. DSG operates sporting goods stores throughout the United States and sells a variety of sporting goods directly to consumers. DSG markets its products to consumers (including those in this District) through in-store promotions, television advertisements, Internet-based advertising, and via text message marketing as alleged herein.

10. Plaintiff is unaware of the names, identities, or capacities of the defendants sued as Does 1-10, but is informed and believes and thereon alleges that each such fictitiously-named defendant is responsible in some manner for the damages and abridgement of rights described in this Complaint. Plaintiff will amend his Complaint to state the true names, identities or capacities of such fictitiously-named defendants when ascertained.

## COMMON ALLEGATIONS OF FACT

11. Like many marketers, DSG has a "short message service," or "SMS," text message program which allows the company to cheaply and quickly send solicitations to many customers. This program is especially attractive in light of several federal laws which significantly curtail the use telephonic, facsimile, and other means of solicitation to consumers.

12. An "SMS" message is a short (usually around 150 character) text message call directed to wireless and cellular telephones. Upon receipt, the receiving cell phone alerts its owner that a text message call has been received. In common parlance, mass SMS messages sent to many individual consumers are referred to as "wireless spam."

13. Contrary to other forms of solicitation, such as direct mail, SMS messages, particularly wireless spam, often result in actual costs for the consumer under the terms and conditions of each consumer's cellular phone plan. That is because, depending on the particular terms of the plan, consumers must either pay their cellular service providers for each SMS text they send or receive or incur a deduction to the total amount of SMS texts allotted to their plan each month, regardless as to whether the SMS text is authorized or not.

14. The TCPA governs promotional or marketing SMS text messages sent to consumer's wireless phones from automated dialing technology. In short, the TCPA requires that any such SMS text be sent from automated dialing technology only with the "prior express consent" of the receiving consumer.

15. Pursuant to the TCPA, the Federal Communications Commission has the power to promulgate rules to define "prior express consent." Beginning on October 16, 2013, the FCC's current rules (the "October 2013 rules") became effective. Those rules, which are contained at 47 *C.F.R.* § 64.1200, required the following characteristics and requirements for "prior express consent":

    a.    The agreement must be in writing;

     b.    The agreement must bear the signature of the person who will receive the SMS text message;

     c.    The language of the agreement must clearly authorize the sender (*i.e.*, DSG) to deliver or cause to be delivered ads or marketing messages via automated dialing technology, including SMS texts;

     d.    The agreement must include the telephone number of the person agreeing to receive the marketing SMS texts; and

     e.    The agreement must contain a clear and conspicuous disclosure informing the consumer that the sender (*i.e.*, DSG) is utilizing automated dialing technology to send the SMS text messages and that enrollment in the program is not a condition of purchase of the sender's goods or services.

16.    The FCC's prior express consent rules do not allow "grandfathered" consent obtained prior to the implementation of the October 2013 rules. Instead, the FCC has further ruled as follows: "[S]hould any question about the consent arise, the seller [*i.e.*, DSG] will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained." *See* 27 FCC Record at 1844 ¶ 33. Thus, senders such as DSG bear the burden of showing that each of their promotional SMS text messages as described herein were sent with the "prior express consent" required by the FCC's rules.

17.    Since at least 2010, and continuing to the present, DSG began a marketing program centered on "mobile alerts" in the form of SMS text messages. Pursuant to that campaign, consumers could either sign up for mobile alerts on DSG's website or send an SMS text message with the word "JOIN" to the "short code" number, which is a number akin to a telephone number used to receive SMS text messages, of 34257. The use of a "short code" permitted Defendant to transmit thousands of wireless spam to different mobile phone numbers.

18. DSG acknowledges in its "terms and conditions" for the mobile alerts program, available on DSG's website, that the SMS text messages DSG sent pursuant to the program "will be sent to your mobile phone number using automated dialing technology."

19. However, on information and belief, DSG's description for the program from 2010 to at least February 28, 2013 did not contain the characteristics and requirements mandated by the FCC's October 2013 rules. Namely, none of these disclosures, either on DSG's "mobile alerts" page or in the "terms and conditions," contained information indicating that DSG's "mobile alerts" would be sent using automated dialing technology or that enrollment in the program was not a condition of purchasing DSG's goods or services.

20. DSG's mobile alerts terms and conditions further provide as follows:
> By entering your mobile phone number you are subscribing to receive promotional text messages and alerts from DICK'S Sporting Goods. … You may cancel the DICK'S Sporting Goods Mobile Alerts program at any time by texting the keyword "STOP" to the short code 34257.

21. On or about May 4, 2015, Plaintiff enrolled in DSG's mobile alert program by text messaging the word "JOIN" to the "short code" of 34257. As a result, Plaintiff became enrolled in DSG's "mobile alerts" program pursuant to the applicable terms and conditions.

22. Thereafter, on or about December 6, 2015, Plaintiff texted the word "Stop" to DSG's "short code" of 34257, indicating that he no longer wished to participate in DSG's mobile alerts program in conformance with DSG's mobile alert program's terms of service. Moments later, DSG sent Plaintiff an SMS text message that read as follows:
> DSG Mobile Alerts: You have been unsubscribed and will no longer receive messages from us. Reply HELP for help. 877-846-9997.

407865
6
**CLASS ACTION COMPLAINT**

Case 8:16-cv-00097-CJC-DFM Document 1 Filed 01/22/16 Page 7 of 10 Page ID #:7

23. However, despite Plaintiff's indication that he no longer wished to participate in the program, DSG continued to send wireless spam to Plaintiff's cell phone using the "short code" of 34257. As of January 22, 2016, over one month since he indicated that he no longer wished to participate in the program, Plaintiff has received eight unconsented SMS text messages from DSG's "short code" of 34257 on the following dates: December 11, 2015; December 15, 2015; December 19, 2015; December 26, 2015; January 1, 2016; January 14, 2016; January 18, 2016; and January 22, 2016. Each of these SMS text messages were sent automatically and instantaneously by Defendant using an automatic telephone dialing system from the "short code" of 34257 and contained a generic, non-personalized advertisement.

24. Under the terms of DSG's "mobile alerts" program, Plaintiff's express indication (by texting the designated keyword "STOP" to the "short code" of 34257) that he no longer wished to participate in the program revoked his consent to receive SMS text messages containing a generic, non-personalized advertisement sent by DSG via automatic dialing technology as part of DSG's mobile alerts program. Accordingly, all such SMS text messages Plaintiff received without consent were unauthorized and violations of the TCPA.

## CLASS ACTION ALLEGATIONS

25. As noted above, Plaintiff brings this action on behalf of himself and a nationwide class, defined as follows:

> All persons in the United States and its territories who, within four years prior to the commencement of this litigation, were sent, using an automatic dialing system, any text messages by or on behalf of Defendant to their cellular telephone and who did not consent to receive such messages.

26. Upon information and belief, there are hundreds, if not thousands, of members of the class. Joinder of all members is therefore impracticable.

407865

7

**CLASS ACTION COMPLAINT**

27. Common questions of law and fact exist as to all class members such that those questions predominate over questions affecting Plaintiff or individual class members. These common questions include, but are not limited to, the following:

    a. Did Defendant and/or its agents send one or more unauthorized text messages to class members?

    b. Did Defendant and/or its agents send text messages to persons who did not provide prior express consent as mandated by the TCPA to receive them?

    c. Did Defendant and/or its agents use an automatic telephone dialing system to send the text messages at issue?

    d. Should the Court enjoin Defendant from engaging in such conduct in the future?

    e. Are class members entitled to treble damages based upon the willfulness of Defendant's conduct?

28. In transmitting the unauthorized and unconsented text messages at issue, Defendant has acted and failed to act on grounds generally applicable to Plaintiff and other class members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward class members and to make injunctive or corresponding declaratory relief appropriate for all class members.

29. The factual and legal bases of Defendant's liability to Plaintiff and each class member are the same, resulting in injury to Plaintiff and each class member as a result of Defendant's unlawful transmission of the unauthorized and unconsented text messages described herein.

30. Plaintiff will fairly and adequately represent and protect the interests of other class members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiff and his counsel will vigorously prosecute this action on behalf of the class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other class members.

31. Most class members would find the costs of litigating their claims prohibitive and therefore would have no effective remedy without a class action. Further, class treatment of common questions of law and fact is superior to multiple, individual litigation or piecemeal adjudication because it preserves the resources of the courts and litigants as well as promotes consistent and efficiency of adjudication.

## FIRST CAUSE OF ACTION

## Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq.*)

32. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

33. Defendant directed the placement of unauthorized and unconsented commercial text message calls to a list of wireless telephone numbers of Plaintiff and other class members using equipment that had the capacity at the time the calls were placed to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial those numbers without human intervention.

34. The generic text messages described herein were made through the use of a short code without the prior, express consent of Plaintiff or the class.

35. Defendant has therefore violated the TCPA. Namely, Defendant has violated 47 *U.S.C.* § 227(b)(1)(A)(iii).

36. As a result of Defendant's unlawful conduct, Plaintiff and class members have had their privacy rights violated, have suffered actual and statutory damages, and, under 47 *U.S.C.* § 227(b)(3)(B), are each entitled to, among other things, a minimum of $500.00 in damages for each of Defendant's violations of the TCPA.

37. To the extent Defendant knew or should have known that Plaintiff and class members did not provide prior, express consent to be sent the text messages at issue, the Court should, pursuant to 47 *U.S.C.* § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and class members.

////

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the class, prays for the following relief:

1. For an order certifying the class as defined above;
2. For an award of the greater of actual or statutory damages pursuant to 47 *U.S.C.* § 227(b)(3)(B);
3. For an award of treble damages pursuant to 47 *U.S.C.* § 227(b)(3)(C);
4. For reasonable attorney's fees and expenses;
5. For taxable costs;
6. For pre and post-judgment interest as allowed by law; and
7. For any other relief the Court deems just.

## **JURY DEMAND**

Plaintiff requests trial by jury of all claims that are so triable.

Dated: January 22, 2016
                                      ENGSTROM, LIPSCOMB & LACK
                                      LAW OFFICES OF BRIAN J. SOO-HOO

                                      By: */s/ Paul A. Traina*
                                                   Walter J. Lack, Esq.
                                                   Paul A. Traina, Esq.
                                                   Ian P. Samson, Esq.
                                                   Brian J. Soo-Hoo, Esq.
                                                   Attorneys for Plaintiff