John Du Wors, SBN 233913
*john@newmanlaw.com*
Nathan Durrance, SBN 229210
*nate@newmanlaw.com*
Samantha Everett, SBN 234402
*samantha@newmanlaw.com*
NEWMAN DU WORS LLP
2101 Fourth Avenue, Suite 1500
Seattle, WA  98121
Telephone:     (206) 274-2800
Facsimile:     (206) 274-2801

Attorneys for Defendants
Dick's Sporting Goods, Inc. and Zeta
Interactive Corporation

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| PHILLIP NGHIEM, | Case No. 8:16-cv-00097-CJC-DFM |
| Plaintiff, | Assigned to Hon. Cormac J. Carney |
| v. | **DEFENDANTS DICK'S SPORTING GOODS, INC. AND ZETA INTERACTIVE CORP.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION OR, IN THE ALTERNATIVE, FOR DISCOVERY ON THE ISSUE OF ARBITRABILITY** |
| DICK'S SPORTING GOODS, INC., ZETA INTERACTIVE CORPORATION, and DOES 1-10, inclusive, | |
| Defendants. | |
| | Hearing Date:        July 11, 2016 |
| | Hearing Time:        1:30 p.m. |
| | Location:        Courtroom 9B |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 11,  2016, at 1:30 p.m., or as soon

thereafter as the matter may be heard, in Courtroom 9B of the United States

i
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

Courthouse, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, Defendant Dick's Sporting Goods, Inc. ("DSG") and Zeta Interactive Corporation ("Zeta") (collectively, "Defendants") will, and hereby do, move the Court for an order (1) compelling Plaintiff Phillip Nghiem ("Nghiem") to submit to individual arbitration on the claims identified in this lawsuit, and (2) to dismiss or stay this action pending the conclusion of that proceeding. Alternatively, the Court should order phased discovery on the extent to which Nghiem agreed to arbitrate his claims individually. Defendants submit this motion as a response to the First Amended Complaint. If an answer or other response is required, Defendants request ten (10) days from the Court's order on this motion to respond to the First Amended Complaint.

This motion is made because Nghiem had actual knowledge or inquiry notice of—and thus assented to—the terms found on DSG's website, which contain a clear and conspicuous arbitration agreement, as well as a class action waiver. This motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, and any supporting declaration filed in support thereof.

Dated: June 13, 2016.                    Respectfully Submitted,

NEWMAN DU WORS LLP

By: _____

John Du Wors, State Bar No. 233913
john@newmanlaw.com
Nathan Durrance, State Bar No. 229210
nate@newmanlaw.com
Samantha Everett, State Bar No. 234402
samantha@newmanlaw.com
Attorneys for Defendants

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................... 1

II.     CERTIFICATION OF CONFERENCE OF COUNSEL ........................... 2

III.    STATEMENT OF FACTS ............................................................... 2

      A.    Plaintiff signed up for the Text Alerts program on DSG's
              website, which contains clear and conspicuous Terms of Use........... 3

      B.    DSG's website contains browse wrap agreements that contain a
              clear and conspicuous arbitration agreement and class action
              waiver. ............................................................................... 4

      C.    Plaintiff is a plaintiff-side TCPA class action lawyer whose
              litigation team investigated and demanded payment from DSG
              prior to his enrollment in the Text Alerts program............................ 5

      D.    Plaintiff Nghiem has been hunting for a text messaging lawsuit
              since at least December, 2014............................................. 7

IV.     ARGUMENT AND AUTHORITY ............................................................. 8

      A.    Arbitration clauses are enforceable and motions to compel are
              liberally granted. ................................................................. 9

      B.    The arbitration agreement here is enforceable because there was
              a valid agreement and the dispute falls within its bounds. ............... 10

      C.    The Terms of Use's class action waiver is enforceable. ...................17

      D.    The arbitration clause and class action waiver survives beyond
              the "termination" of Nghiem's contract with DSG........................ 18

      E.    Plaintiff's self-serving statement that he did not consent to
              arbitration is insufficient to avoid enforcement of an arbitration
              clause. .............................................................................. 20

      F.    The Arbitration clause and class action waiver extend to any
              claims Plaintiff may have against Zeta. ............................................. 21

      G.    The Court should dismiss the complaint, or in the alternative

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

stay further proceedings pending the conclusion of the arbitration. ...................................................................... 23

H.   Alternatively, the Court should order limited discovery on the issue of whether Nghiem's claims are subject to arbitration............ 24

I.   CONCLUSION .......................................................................... 25

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Anthony Int'l L.P.*,
  341 F.3d 256 (3rd Cir. 2003) ............................................................. 23

*Arciniaga v. Gen. Motors Corp.*,
  460 F.3d 231, 234 (2d Cir. 2006) ........................................................ 9

*AT&T Tech., Inc. v. Comm'n Workers of Am.*,
  475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ............................... 10

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975)............................................................ 24

*Borden, Inc. v. Florida East Coast Ry. Co.*,
  772 F.2d 750 (11th Cir. 1985) .......................................................... 24

*Bosinger v. Phillips Plastics Corp.*,
  57 F. Supp. 2d 986 (S.D. Cal. 1999) .................................................... 16

*Bridgemans Servs. Ltd. v. George Hancock, Inc.*,
  No. C14-1714JLR, 2015 WL 4724567 (W.D. Wash. Aug. 7, 2015)....................15

*Britton v. Co-op Banking Group*,
  F.3d 742, 745 (9th Cir. 1993)........................................................... 23

*Brown v. DIRECTV, LLC*,
  CV 12-08382 DMG EX, 2013 WL 3273811 (C.D. Cal. June 26, 2013) ............ 19

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).......................... 10

*Buffington v. Baltimore County*,
  913 F.2d 113 (4th Cir. 1990) ........................................................... 24

*C.f. Holcombe v. DIRECTV, LLC*,
  4:15-cv-0154-LMM, 2016 WL 526244 (N.D. Ga. Feb. 9, 2016)....................... 19

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) ................................................. 19

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

207 F.3d 1126 (9th Cir. 2000) ................................................ 10

*Cline v. Chase Manhattan Bank USA*,
    2008 WL 4200154 (D. Utah Sept. 12, 2008) ................................ 20

*Coppock v. Citigroup, Inc.*,
    No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) .......... 15, 19

*Crawford v. Beachbody, LLC*,
    No. 14CV1583-GPC KSC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ..... 12, 14

*Dang v. Samsung Elecs. Co.*,
    No. 14-CV-00530-LHK, 2015 WL 4735520, (N.D. Cal. Aug. 10, 2015) ..... 10, 15

*Daoud v. Ameriprise Fin. Serv., Inc.*,
    2011 WL 6961586 (C.D. Cal. 2011) ...................................... 24

*Discover Bank v. Superior Court*,
    36 Cal. 4th 148 (2005) ................................................ 18

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012) ................................... 15

*Fagerstrom v. Amazon.com, Inc.*,
    No. 15-CV-96-BAS-DHB, 2015 WL 6393948 (S.D. Cal. Oct. 21, 2015) ...... 13

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) ................................... 14

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................... 14

*Guadagno v. E*Trade Bank*,
    592 F. Supp. 2d 1263 (C.D. Cal. 2008) ............................... 11, 14

*Hamby v. Power Toyota Irvine*,
    798 F. Supp. 2d 1163 (S.D. Cal. 2011) ................................. 25

*Hines v. Overstock.com, Inc.*,
    668 F. Supp. 2d 362 (E.D.N.Y. 2009) ................................... 11

*In Lucas v. Hertz Corp.*,
    No. C 11–01581, 2012 WL 2367617, (N.D. Cal. June 21, 2012) ........... 22

2
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

*In re Jiffy Lube Intern., Inc. Text Spam Litig.*,
  847 F. Supp. 2d 1253 (S.D. Cal. 2013) ................................................ 17

*In re Zappos.com, Inc.*, Customer Data Sec. Breach Litigation,
  893 F.Supp.2d 1058 (D. Nev. 2012) ................................................ 12

*Kingsley Capital Management, LLC v. Sly*,
  820 F. Supp. 2d 1011, 1018 (D. Ariz. 2011) .................................... 21

*Laguna v. Coverall N. Am., Inc.*,
  2011 WL 3176469 (S.D. Cal. Jul. 26, 2011) .................................... 25

*Larsen v. J.P. Morgan Chase Bank, N.A.*,
  2011 WL 3794755 (11th Cir. Aug. 26, 2011) .................................. 25

*Leventis v. AT&T Advert. Sols.*,
  No. 3:11-CV-03437-CMC, 2012 WL 931081 (D.S.C. Mar. 19, 2012) ............. 14

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*,
  501 U.S. 190 (1991) ................................................ 19

Mark A. Lemley, Terms of Use,
  90 Minn. L.Rev. 459 (2006) ................................................ 12

*McNamara v. Royal Bank of Scotland Group, PLC*,
  11-cv-2137-L WVG, 2012 WL 5392181 (S.D. Cal. Nov. 5, 2012) ................. 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ............................. 10

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042, 1045 (9th Cir. 2009) ................................................ 21

*Murphy v. DIRECTV, Inc.*,
  2011 WL 3319574 (C.D. Cal. Aug. 2, 2011) .................................... 18

*Newton v. Clearwire Corp.*,
  2011 WL 4458971 (E.D. Cal. Sept. 23, 2011) .................................. 24

*Nicosia v. Amazon.com, Inc.*,
  84 F. Supp. 3d 142 (E.D.N.Y. 2015) .................................... 11, 13

*OfferHubb.net, Inc. v. Fun Club USA, Inc.*,
  No. 2:14-CV-00190-RFB, 2015 WL 4508728 (D. Nev. July 24, 2015) ............. 10

3
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

*PDC Labs., Inc. v. Hach Co.*,
   No. 09–1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) .............................. 14

*Plows v. Rockwell Collins, Inc.*,
   2011 WL 3501872 (C.D. Cal. Aug. 9, 2011)....................................................... 25

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) .............................................................................................15

*PRM Energy Systems, Inc. v. Primenergy, LLC*,
   592 F.3d 830 (8th Cir. 2010) .............................................................................. 22

*Reeves v. Chase Bank USA, NA*,
   2008 WL 2783231 (E.D. Mo. Jul. 15, 2008) ...................................................... 21

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469, 475 (9th Cir. 1991) ............................................................10, 11, 17

*Sanders v. Swift Transp. Co. of Arizona, LLC*,
   843 F. Supp. 2d 1033 (N.D. Cal. 2012) ............................................................. 22

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) .............................................................................. 10

*Sourcing Unlimited, Inc. v. Asimco Intern., Inc.*,
   526 F.3d 38 (1st Cir. 2008)................................................................................. 22

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) .............................................................................. 24

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17, 22 n. 4 (2d Cir. 2002)....................................................................11

*Starke v. Gilt Groupe, Inc.*,
   No. 13-CV–5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...................... 14

*Stinger v. Chase Bank, USA, NA*,
   265 Fed. Appx. 224; 2008 U.S. App. LEXIS 2751 (5th Cir. Feb. 7, 2008) ...... 20

*Swift v. Zynga Game Network, Inc.*,
   805 F.Supp.2d 904 (N.D. Cal. 2011)................................................................. 14

*Trippe Mfg. Co. v. Niles Audio Corp.*,
   401 F.3d 529 (3d Cir. 2005) ..........................................................................10, 11

4
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

*Van Tassell v. United Mktg. Grp.*,
    795 F.Supp.2d 770 (N.D. Ill. 2011) .................................................. 12

*Walters v. Chase Manhattan Bank*,
    2008 WL 3200739 (E.D. Wash. Aug. 6, 2008) ................................. 20

*Zurich American Ins. Co. v. Watts Industries, Inc.*,
    417 F.3d 682, 687 (7th Cir. 2005) ..................................................... 21

**Rules**

Fed. R. Civ. Proc. 901 ............................................................................ 4

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

# I.    INTRODUCTION

Dick's Sporting Goods, Inc. ("DSG") is one of the largest sporting goods retailers in the world. Zeta Interactive Corporation ("Zeta") is a digital marketing company that operates DSG's Text Alerts program.  Plaintiff Phillip Nghiem ("Nghiem" or "Plaintiff") is a consumer protection class action lawyer who regularly represents consumers in lawsuits alleging violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq.*, the "TCPA").

DSG's Text Alerts program is found on DSG's website and is subject to conditions presented in a conspicuous Terms of Use mandating binding arbitration and waiver of class actions. Like all browse-wrap agreements, these conditions bind anyone with actual knowledge or inquiry notice. Nghiem clearly assented to the conditions in the Terms of Use and Privacy Policy when he learned of the DSG Text Alerts program on DSG's website.

Prior to filing this lawsuit, Plaintiff's law firm—the Manning Law Office—spent months investigating and asserting claims against DSG for alleged TCPA violations. Shortly following his law firm's transmittal of several demand letters to DSG on behalf of potential plaintiffs, Nghiem himself enrolled in the same Text Alerts program his firm had been investigating. A few months later, Nghiem purported to opt out of the text message program. Due to a glitch in the programming for the DSG Text Alerts program, Nghiem's opt-out was unsuccessful. Following discovery of this glitch, Defendants immediately remedied the problem and Nghiem received no further communication from DSG.

In spite of the aforementioned arbitration agreement, Nghiem filed the present putative class action lawsuit against DSG and later added Zeta as a Defendant in his First Amended Complaint ("FAC"). Nghiem refuses to submit to arbitration.

Defendants move this Court to compel Nghiem to submit to individual arbitration, as required by the Terms of Use to which he is bound, and to dismiss or stay this action pending the conclusion of that proceeding. Alternatively, the Court

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

1  should order phased discovery on the issue of arbitration.

2  ## II.   CERTIFICATION OF CONFERENCE OF COUNSEL

3  This motion is made following the conference of counsel pursuant to Civil

4  Local Rule 7-3, which took place on March 25, 2016.

5  ## III.   STATEMENT OF FACTS

6  DSG was founded in 1948 and has grown into one of the largest sporting goods

7  retailers in the world. Declaration of Elizabeth Baran in Support of Defendant's

8  Motion to Compel Arbitration ("Baran Decl."), ¶ 3. During its growth, DSG

9  acquired several other chains, including Golf Galaxy in 2007. *Id*.

10  DSG advertises its products in various ways, including a Text Alerts program,

11  which is promoted on DSG's website. Declaration of Patrick Daley in Support of

12  Defendant's Motion to Compel Arbitration ("Daley Decl."), ¶ 3.

13  DSG is very careful and proactive in making sure its advertising, including its

14  Text Alerts program, comply with all applicable laws and are operated in a

15  responsible manner. To accomplish this, DSG works with Zeta, a professional

16  digital marketing company, which operates the back-end functionality of DSG's

17  Text Alerts program. Declaration of Mike Meyer in Support of Defendant's

18  Motion to Compel Arbitration ("Meyer Decl."), ¶¶ 3,6. The Text Alerts program

19  allows DSG's customers to receive alerts and special offers from DSG on their

20  mobile devices. Daley Decl., ¶ 3. Enrollment is optional and voluntary, which

21  means participants knowingly authorize DSG to send text message alerts and

22  promotions for the brands they select. *Id*.

23  Nghiem's FAC alleges that DSG's Text Alerts program violates the TCPA.

24  Dkt. 33, ¶ 4. Nghiem seeks to represent a class of "hundreds, if not thousands" of

25  people who "were sent, using an automatic dialing system, any text messages by or

26  on behalf of Dick's Sporting Goods, Inc. to their cellular telephone and who did not

27  consent to receive such messages." *Id*. at ¶¶ 27-28.

28  Nghiem's allegations are without merit because, as described below, only

2

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

customers who actively sign up for the Text Alerts program receive messages from DSG, and moreover, when customers sign up for DSG's Text Alerts program, they agree to Terms of Use that require arbitration of disputes and prohibit class actions.

## A. Plaintiff signed up for the Text Alerts program on DSG's website, which contains clear and conspicuous Terms of Use.

In order to sign up for the Text Alerts program, customers must visit DSG's website, where they can enroll via Mobile Signup Form, or learn of an enrollment code number and special keyword. Declaration of Todd Kelly in Support of Defendant's Motion to Compel Arbitration ("Kelly Decl."), ¶ 5-7. The customer enters DSG's enrollment short code number (for example 34527) into its smartphone messaging app and sends the enrollment keyword (for example "JOIN"). When customers, like Plaintiff, enroll in the Text Alerts program, they consent to a conspicuous Terms of Use, which is present on each page of DSG's website. Kelly Decl. ¶ 13.

Plaintiff is bound by the TOU because he enrolled in the program after learning of it on DSG's website. At the time Nghiem enrolled in the Text Alerts program, *the only place he could have learned of the keyword "JOIN," which he used to enroll, was on the DSG Mobile Alerts Terms and Conditions*. Daley Decl. ¶¶ 4-5. On February 20, 2016, when Nghiem enrolled, there were only two ways to access DSG's Mobile Alerts Terms and Conditions and find the "JOIN" code. Kelly Decl., ¶ 5. Both ways required Nghiem to navigate DSG's website.

The first way is as follows:

a) Clicking the "Text Alerts" link in the footer of DSG's homepage, which is adjacent a link to DSG's Terms of Use that contain the arbitration and class action waiver clauses at issue.

b) The "Text Alerts" link directs to DSG's Mobile Signup Form.

c) From the Mobile Signup Form, a customer would have to click on a link

3

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

1    for "Terms and Conditions" to learn the keyword JOIN.

2  Kelly Decl. ¶ 6. The DSG home page, Mobile Signup Form, and Mobile Alerts

3  Terms and Conditions as they existed on February 20, 2015, are attached to the

4  Kelly Decl. as Exs. A-C.

5    The second way is as follows:

6    a.   Clicking on the "Mobile App" button near the bottom of DSG's home

7         page directs to the Mobile App page. Again, the "Mobile App" button is

8         near DSG's Terms of Use, which contain the arbitration and class action

9         waiver clauses at issue.

10   b.   Clicking on the "Sign Up for Text Alerts" link at the bottom of the

11        Mobile App page directs to the Mobile Signup Form.

12   c.   From the Mobile Signup Form, a customer would have to click on a link

13        for "Terms and Conditions" to learn the keyword JOIN.

14  Kelly Decl. ¶ 7. The DSG Mobile App page as it existed on February 20, 2015, is

15  attached to the Kelly Decl. as Ex. D.

16  **B.   DSG's website contains browse wrap agreements that contain a**
17  **clear and conspicuous arbitration agreement and class action**
    **waiver.**

18    All users of DSG's website consent to its Terms of Use and Privacy Policy by

19  using the site. *See* Terms of Use, attached as Exhibit A, and Privacy Policy,

20  attached as Exhibit B, to Declaration of Rebecca Lutz in Support of Defendant's

21  Motion to Compel Arbitration ("Lutz Decl."). The operative Terms of Use are

22  dated February 11, 2014, when they appeared on DSG's website. Lutz. Decl. ¶ 4.

23  Links to the Terms of Use appear in multiple places on DSG's website, including

24  its home page, the DSG Mobile App page, and on every product. Kelly Decl., ¶ 13.

25    Terms of Use ¶ 20 contains a clear and conspicuous arbitration agreement:

26
27        Any matter and/or dispute relating in any way to your visit to or
          interaction with the Site, including compliance with [the Terms of
28        Use], shall be submitted to *binding confidential arbitration* in Pittsburgh,

4
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

1    Pennsylvania as provided in Section 21 (herein).

2   (Emphasis added.)

3    Section 21 of the Terms of Use, for its part, contains a clear and conspicuous

4   trial and class action waiver:

> Arbitration under these Terms shall be conducted under the prevailing
> rules of the American Arbitration Association. The arbitrator's award
> shall be binding and may be entered as a judgment in any court of
> competent jurisdiction. In the event, for any reason, arbitration is not
> permitted by applicable law, the parties *waive all rights to trial by jury
> and waive all right to commence or participate in any class action,
> consolidated, representative or class proceedings*.

(Emphasis added.)

    If that were not enough, the Terms of Use contains a separate class action

waiver in Section 20 in bold print:

> **Any dispute resolution proceedings relating to these Terms or the
> Site will be conducted only on an individual basis and not as a class,
> consolidated, joined or representative action and the parties
> expressly waive all rights to commence or participate in any class,
> consolidated or representative action/proceeding. You agree that
> DICK'S agreement to arbitrate claims constitutes consideration for
> such waiver.**

(Emphasis in original.)

    The Terms of Use are called a browse-wrap agreement, which are typically

posted as a link at the bottom of a website and contain terms a customer agrees to

in exchange for using the site.

**C.   Plaintiff is a plaintiff-side TCPA class action lawyer whose
litigation team investigated and demanded payment from DSG
prior to his enrollment in the Text Alerts program.**

    Plaintiff is an attorney at the Manning Law Office. May 3, 2015 Deposition of

Phillip Nghiem ("Nghiem Dep."), excerpts of which are attached to the

Declaration of John Du Wors in Support of Defendant's Motion to Compel

Arbitration ("Du Wors Decl.") as Ex. A, at 19:16-21. Plaintiff represents plaintiffs

1  in TCPA cases. Nghiem Dep. at 20:16-21:11; 24:16-25:3.

2      In the eight months between March 10, 2015 and November 4, 2015,

3  Nghiem's law firm sent DSG no less than five demand letters on behalf of four

4  different clients. Baran Decl., ¶3. The letters are fairly similar: they all complain

5  that the Text Alerts program violates the TCPA and demand payment. *See* Letters,

6  attached as Exhibits 1–5 to Baran Decl.

7      Plaintiff's law firm wrote the first demand letter to DSG's co-branded

8  subsidiary, Golf Galaxy (which shares space on DSG's website, so there can be no

9  confusion about their relationship) on behalf of their client Jacob Meier. Baran

10  Decl., ¶¶ 3-4. The letter was dated March 10, 2015, and signed by attorney Michael

11  Manning, one of Plaintiff's two direct supervisors. *See* Baran Ex. 1, Nghiem Dep. at

12  34:4-8. According to that letter, Mr. Meier began receiving text messages from the

13  Text Alerts program on February 5, 2015. Baran Ex. 1.

14      Two weeks later, on February 20, 2015, Plaintiff himself enrolled in the Text

15  Alerts program. Baran Decl., ¶ 5. Following Plaintiff's enrollment, his law firm sent

16  four additional letters to DSG demanding payment for alleged violations of the

17  TCPA. On April 6, 2015, Joseph Manning, Plaintiff's other direct supervisor, sent

18  a follow-up demand on behalf of Jacob Meier. Baran Decl. Ex. 2. On April 16, 2015,

19  Joseph Manning sent a demand letter on behalf of Jennifer Loyola. Baran Decl. Ex.

20  3. On August 7, 2015, Joseph Manning sent a demand on behalf of Jeff Dillon.

21  Baran Decl. Ex. 4. And on November 4, 2015, Michael Manning sent a demand to

22  DSG on behalf of Marsha Peterson. Baran Decl. Ex. 5. None of these letters got the

23  response the Manning firm was seeking: money. Baran Decl. ¶ 6. Conveniently,

24  after his two (and only two) supervising attorneys failed to collect from DSG, on

25  December 6, 2015, Plaintiff attempted to opt-out of DSG's Text Alerts program by

26  texting the word "STOP" to DSG's short code of 34257. FAC ¶ 24, Nghiem Dep.

27  at 34:4-8. Plaintiff claims that he continued to receive text messages after his

28  attempted opt-out, in violation of the TCPA. FAC ¶ 25.

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

One can safely assume that Plaintiff and his direct supervising attorneys exhaustively reviewed DSG's website (including the Terms of Use and Privacy Policy) before Plaintiff himself chose to participate in the Text Alerts program. They would have needed to do as much to appropriately represent Mr. Meier.

**D.  Plaintiff Nghiem has been hunting for a text messaging lawsuit since at least December, 2014.**

It is abundantly clear to anyone who observes the evidence in this case, and it will be clear to the Court, that Plaintiff Nghiem has manufactured this class action lawsuit. Nghiem enrolled in DSG's Text Alerts program on February 20, 2015. FAC ¶ 23; Meyer Decl. ¶ 6. Close in time to his enrollment in the DSG Text Alerts program, Nghiem was feverishly enrolling in many others. In fact, at his deposition on May 5, 2016, he testified that he also enrolled in a text alert program from Target in December 2014, Nghiem Dep. at 53:10-18, a text program from Bed Bath and Beyond "recently," Nghiem Dep. at  54:10-25, a text program from Baskin Robbins in the spring of 2015, Nghiem Dep. at 56:3-21, a text program from Express, also in the spring of 2015 ("maybe over a year ago"), Nghiem Dep. at 58:17-59:11, and a text program from Jack in the Box during the winter of 2014-2015, ("about a year and a half ago"), Nghiem Dep. at 63:8-20. He admits that while he was working as a consumer protection attorney litigating TCPA cases on behalf of plaintiffs, he signed up for at least five text message programs (Target, Baskin Robbins, Express, Jack-in—the-Box, DSG). And these were only the programs Plaintiff listed when asked "tell me all of the mobile alerts or mobile advertisements you've been enrolled in." Nghiem Dep. at 52:19-20.

Plaintiff claims that he enrolled in these programs to get coupons or discounts. *See* Nghiem Dep. at 52:21-22; 52:24-25; 53:12-14; 56:18; 94:2-7. But he admitted that he didn't use them as he claims he intended to, and the reasons he asserts are plainly pretextual. He did not use any discount from DSG for running shoes because, he claims, his brother bought him a pair of shoes instead.  Nghiem Dep. at

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

94:4-12. He did not use his coupon to Bed Bath and Beyond because he "found the iron cheaper somewhere else." Nghiem Dep. at 62:18-22. He did not buy furniture at Target, as he intended, but bath towels instead. Nghiem Dep. at 52:21-22, 62:8-12. And at Jack-in-the-Box he may have–though he can't remember–used his coupon to try a forgettable burger. Nghiem Dep. at 64:8-13.

And not only did Nghiem testify to his enrollment in these multiple mobile alerts programs all around the same period of time, when his firm was hunting for payouts for alleged TCPA violations, he failed to mention several other text alerts programs he enrolled in around that same time. Meyer Decl. at ¶¶ 4-5. Plaintiff's failure to provide testimony on his enrollment in these programs supports one of only two inferences: either he is not telling the truth about his motivations for his enrollment in text messaging programs *en masse*, or he was so feverishly enrolling in text messaging programs in order to manufacture a class action that he can't remember all of them. Either way he is on inquiry notice. Even if he did not visually inspect DSG's Terms of Use, it was because he was too busy enrolling in text programs in order to bait a lawsuit. Nghiem's compulsive enrollment in text alerts programs renders it undeniable that he was trying to manufacture a class action. As a sophisticated class action attorney actively seeking a lawsuit by enrolling in text messaging programs, Nghiem cannot reasonably deny that he either knew or should have known of DSG's Terms of Use.

## IV.   ARGUMENT AND AUTHORITY

In ruling on a motion to compel arbitration, the Court′s role is limited to determining whether: (1) there is an agreement between the parties to arbitrate; (2) the claims at issue fall within the scope of the agreement; and (3) the agreement is valid and enforceable. *Lifescan, Inc. v. Pernaier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside of the pleadings. *Xinhua Holdings Ltd. v. Elec. Recyclers Intern., Inc.*, 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at

1   *5 (E.D. Cal. Dec. 26, 2013). If those questions are answered in the affirmative, the

2   court must compel the parties to arbitrate their claims and dismiss or stay the

3   current litigation. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218,105

4   S.Ct. 1238,84 L.Ed.2d 158 (1985) ("By its terms, the [FAA] leaves no room for the

5   exercise of discretion by a district court, but instead mandates that district courts

6   shall direct the parties to proceed to arbitration.").

7       Under the FAA, a court must compel arbitration if: (1) " ... a valid agreement

8   to arbitrate exists" and (2) "the agreement encompasses the dispute at issue."

9   *Chiron Corp.*, 207 F.3d at 1130. "[A]ny doubts concerning the scope of arbitrable

10  issues should be resolved in favor of arbitration ...." *Moses H. Cone Memorial*

11  *Hospital v. Mercury Constr. Corp.*, 460 U.S. 1,24-25 (1983). "The standard for

12  demonstrating arbitrability is not high. [...] Such [arbitration] agreements are to be

13  rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

14  "[T]he party resisting arbitration bears the burden of proving that the claims at

15  issue are unsuitable for arbitration." *Green Tree Financial Corp.-Alabama v.*

16  *Randolph*, 531 U.S. 79, 81,121 S.Ct. 513,148 L.Ed.2d 373 (2000).

## A.   Arbitration clauses are enforceable and motions to compel are liberally granted.

19      "[I]t is difficult to overstate the strong federal policy in favor of arbitration."

20  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006). Indeed, there is a

21  ***presumption*** that arbitration clauses are enforceable (including the one on DSG's

22  website), doubts should be resolved in favor or arbitration, and motions to compel

23  valid arbitration agreements are liberally granted. *AT&T Tech., Inc. v. Comm'n*

24  *Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "[A]s a

25  matter of federal law, any doubts concerning the scope of arbitrable issues should

26  be resolved in favor of arbitration, whether the issue is the construction of the

27  contract language itself or an allegation of waiver, delay, or a like defense to

28  arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–

25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In the landmark case *AT&T Mobility LLC v. Concepcion*, the Supreme Court re-emphasized the "liberal federal policy favoring arbitration" and instructed the district courts that the FAA makes such agreements "valid, irrevocable, and enforceable." 563 U.S. 333, 339, 131 S. Ct. 1740, 1745, 179 L.Ed.2d 742 (2011).

Accordingly, a motion to compel arbitration should not be denied "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582-583, 4 L. Ed. 1409, 80 S. Ct. (1960); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ("The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms."); *Dang v. Samsung Elecs. Co.*, No. 14-CV-00530-LHK, 2015 WL 4735520, at *4 (N.D. Cal. Aug. 10, 2015) (stating a federal court must "giv[e] due regard to the federal policy in favor of arbitration by resolving ambiguities" in favor of arbitration); *OfferHubb.net, Inc. v. Fun Club USA, Inc.*, No. 2:14-CV-00190-RFB, 2015 WL 4508728, at *2 (D. Nev. July 24, 2015).

**B.  The arbitration agreement here is enforceable because there was a valid agreement and the dispute falls within its bounds.**

A motion to compel arbitration calls for "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (affirming district court's order to compel arbitration); *see* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991). In "determining both the existence and scope of an arbitration agreement, there is a presumption in favor of arbitrability." *Trippe*, 401 F.3d at 532. If the

response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms.

Examining the facts of this case under the Supreme Court test, it is beyond question that the motion to compel arbitration should be granted because (1) Plaintiff had reasonable notice of DSG's Terms of Use, including the arbitration agreement, and it is therefore valid and binding; and (2) the present dispute falls within the scope of the arbitration agreement.

### 1.   The Arbitration Clause is Binding Because Plaintiff Had Constructive Knowledge of DSG's Terms of Use

DSG's Terms of Use constitutes what federal courts have called a "browsewrap" agreement, which is enforceable only upon a showing of actual or constructive knowledge. (Resp. 8–9.) But browsewrap agreements, including those with arbitration clauses, are frequently enforced by the courts. *See, e.g., Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 152-53 (E.D.N.Y. 2015); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984, 835 N.E.2d 113, 121 (Ill. Ct. App. 2005).

With a browsewrap agreement, a website owner posts terms and conditions somewhere on the website, usually accessible through a hyperlink. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 22 n. 4 (2d Cir. 2002). The user "gives his assent simply by using the website." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (quotation omitted). "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of a browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Van Tassell v. United Mktg. Grp.*, 795 F.Supp.2d 770, 790 (N.D. Ill. 2011) (citing *Pollstar v. Gigmania, Ltd.*, 170 F.Supp.2d 974, 981 (E.D. Cal. 2000)); *see also* Mark A. Lemley, Terms of Use, 90 Minn. L.Rev. 459, 477 (2006) ("Court may be willing to overlook the utter absence of assent only when there are

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

1  reasons to believe that the [website user] is aware of the [website owner's]
2  terms.").

3      When a plaintiff denies actual knowledge of the agreement, the validity of a
4  browsewrap agreement hinges on whether the website puts a reasonably prudent
5  user on inquiry notice of the terms of the contract. *Van Tassell*, 795 F.Supp.2d at
6  791 (citing *Specht*, 306 F.3d at 32); *Crawford v. Beachbody, LLC*, No. 14CV1583-
7  GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014); *In re Zappos.com, Inc.*,
8  Customer Data Sec. Breach Litigation, 893 F.Supp.2d 1058, 1064 (D. Nev. 2012).
9  "The conspicuousness and placement of the 'Terms of Use' hyperlink, other
10  notices given to users of the terms of use, and the website's general design all
11  contribute to whether a reasonably prudent user would have inquiry notice of a
12  browsewrap agreement." *Crawford*, 2014 WL 6606563, at *3.

13          **a.    DSG's browsewrap agreement would put a**
14          **reasonably prudent user on inquiry notice of its**
                **Terms of Use**

15      Plaintiff had reasonable inquiry notice of DSG's browsewrap agreement and is
16  therefore bound by the arbitration clause. To enroll in DSG's mobile alerts
17  program, Plaintiff was required to text the word "JOIN" to the short code
18  enrollment number 34257: "You may opt-in to the DICK'S Sporting Goods
19  Mobile Alerts program at any time by texting the keyword "JOIN" to the short
20  code 34257." Kelly Decl., Ex. C.

21      At the time of Plaintiff's enrollment, the **only** place where DSG's mobile
22  alerts program was discussed, and the **only** place where the enrollment short code
23  number and "JOIN" code used by Plaintiff were revealed, was on DSG's website
24  as discussed above. DSG did not use any other media to discuss or instruct users
25  how to enroll in the mobile alerts program. Daley Decl. ¶¶ 4-5. There were only
26  two available options to learn of the code JOIN, and both required significant
27  navigation of the DSG website. *See* Kelly Decl. ¶¶ 7-8. As such, Plaintiff must have
28  visited and navigated Plaintiff's website, and accordingly, became bound by the

MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION

1    Terms of Use.

2         DSG's Terms of Use are located by hyperlinks throughout DSG's website

3    and are conspicuous. A hyperlink to DSG's Terms of Use, including the binding

4    arbitration clause, was located on the same DSG web pages where Plaintiff went

5    shopping for shoes and navigated through to get the mobile alerts enrollment short

6    code number and "JOIN" code. Kelly Decl. ¶ 13, Exhs. A-B. If Plaintiff accessed

7    the "JOIN" code by using the "Text Alerts" link in the footer of the DSG

8    homepage, then a hyperlink to DSG's Terms of Use was directly adjacent. Kelly

9    Decl. ¶ 6, Ex. A. If he used the alternative option and found the link through the

10   Mobile App page, then the link to the DSG Terms of Use was directly below. Kelly

11   Decl. ¶ 7, Ex. A. Either way, the DSG Terms of Use link was in plain sight.

12   Further, the hyperlink was set off in dark font against a white background, and

13   obvious to anyone navigating the page. Kelly Decl. Ex. A. The hyperlink is not in

14   tiny print-- it is plainly visible. Kelly Decl. ¶ 13.

15        This was enough to put Plaintiff on reasonable notice of the Terms of Use and

16   the arbitration clause. Courts have enforced Terms of Use found in browsewrap

17   agreements under similar facts—where hyperlinked terms and conditions are

18   conspicuously placed near a button or information accessed by the consumer. *See,*

19   *e.g, Nicosia,* 84 F.Supp.3d at 152 (finding that Plaintiff was on inquiry notice of

20   browsewrap terms in part because of the conspicuous placement of the hyperlink to

21   the conditions of use at the top of the checkout page); *Fagerstrom v. Amazon.com,*

22   *Inc.*, No. 15-CV-96-BAS-DHB, 2015 WL 6393948, at *12 (S.D. Cal. Oct. 21, 2015)

23   (finding arbitration agreement enforceable where text of the notice was located

24   directly underneath the "Review your order" header such that it is clearly visible

25   when viewing the page); *PDC Labs., Inc. v. Hach Co.*, No. 09–1110, 2009 WL

26   2605270, at *3 (C.D. Ill. Aug. 25, 2009) (finding a browsewrap agreement was

27   sufficiently conspicuous to users of a website where a hyperlink to the agreement

28   was included on multiple pages of the website in underlined, blue, contrasting

text); *Guadagno*, 592 F. Supp. 2d at 1271(upholding an arbitration clause contained in terms and conditions that were accessible by hyperlink next to a button on a registration page); *see also Crawford*, 2014 WL 6606563, at *3; *Starke v. Gilt Groupe, Inc.*, No. 13-CV-5497, 2014 WL 1652225, at *2-3 (S.D.N.Y. Apr. 24, 2014); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012); *Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 908, 912 (N.D. Cal. 2011); *Hubbert*, 359 Ill.App.3d at 296; *Nguyen*, 763 F.3d at 1177. The notice of the Terms of Use may not dominate the entire DSG web page display, but it is reasonable notice, and that is all that is required.

### b.   Plaintiff is more sophisticated that the average website user—which weighs in favor of both actual and constructive notice

Further, Plaintiff is a sophisticated consumer protection attorney who litigates TCPA cases on behalf of plaintiffs. As a plaintiffs' attorney employed by a law firm that has filed numerous cases against parties for TCPA violations, Plaintiff would be on high alert for things such as Terms of Use and arbitration clauses. He certainly knows that a hyperlink to "terms of use" will contain legal obligations. *See Leventis v. AT&T Advert. Sols.*, No. 3:11-CV-03437-CMC, 2012 WL 931081, at *6 (D.S.C. Mar. 19, 2012) (finding plaintiff's profession as an attorney and years of experience placed him on notice that there were Terms and Conditions which were incorporated into a contract and it was his responsibility to obtain and read the terms); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 241 (E.D. Pa. 2007) (finding online agreement was not procedurally unconscionable where attorney plaintiff was a sophisticated purchaser and capable of understanding the agreement's terms). Common sense dictates that Plaintiff—an attorney—is on notice when it comes to Terms of Use made available through a hyperlink on a business's website. *See Hubbert*, 359 Ill. App. 3d at 984 ("Common sense dictates that because the plaintiffs were purchasing computers online, they were not novices when using computers."). This factor weighs heavily in showing Plaintiff had reasonable

1  inquiry notice of DSG's Terms of Use.

2      Whether or not Plaintiff actually read DSG's Terms of Use is irrelevant to his

3  constructive knowledge of the terms—he is still bound by them. *See Dang v.*

4  *Samsung Elecs. Co.*, No. 14-CV-00530-LHK, 2015 WL 4735520, at *6 (N.D. Cal.

5  Aug. 10, 2015) (stating it is well established that "a party cannot avoid the terms of

6  a contract by failing to read them"); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F.

7  Supp. 2d 894, 902 (S.D. Ill. 2012) ("Plaintiffs are bound by Facebook's TOS

8  whether Plaintiffs read them or not."). "In this day and age, failure to click an

9  overt hyperlink in an electronic document" is analogous to choosing not to read

10  contract terms. *Bridgemans Servs. Ltd. v. George Hancock, Inc.*, No. C14-1714JLR,

11  2015 WL 4724567, at *3 (W.D. Wash. Aug. 7, 2015).

12      **2.   The Arbitration Clause Encompasses the Current Dispute**

13      Consistent with strong federal policy favoring arbitration agreements, a

14  motion to compel arbitration "should not be denied unless it may be said with

15  positive assurance that the arbitration clause is not susceptible of an interpretation

16  that covers the asserted dispute." *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC,

17  2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013) (quoting *AT&T Technologies,*

18  *Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89

19  L.Ed.2d 648 (1986)). Court resolves doubts concerning the scope of arbitration

20  agreements in favor of coverage. *Id.*

21      "To require arbitration, [the Plaintiffs'] factual allegations need only 'touch

22  matters' covered by the contract containing the arbitration clause…" *Simula*, 175

23  F.3d at 721. There can be no dispute that the language in DSG's arbitration clause

24  is very broad. *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395,

25  397 (1967) ("any controversy or claim arising out of or relating to this Agreement"

26  is a broad arbitration clause); *see also Chiron Corp.*, 207 F.3d at 1131 (clause

27  requiring arbitration of any dispute "relating to" agreement "broad and far

28  reaching"). Moreover, courts have held that claims necessarily "touch upon" the

parties' agreement where, as here, the claims relate to a relationship that would not have existed "but for" the agreement. Such claims "touch upon" the parties' agreement because they "stem[] from the parties' relationship." *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986,993 (S.D. Cal. 1999).

The dispute between these parties is whether DSG violated the TCPA by sending text messages to Plaintiff after he sent the message "STOP." The Terms of Use on DSG's web page at the time Plaintiff enrolled in the messaging program were intended to resolve any and all disputes of any type whatsoever between DSG and the user. The top of the Terms of Use plainly states that the Terms of Use are applicable to all of DSG's operations, including the web site, mobile sites, and applications, which the mobile alerts program is a part of, and further warns the user (in bold and all caps lettering) that use of the DSG site confirms the user's unconditional acceptance of the Terms of Use:

> Terms of Use Effective Date: February 11, 2015
>
> … These Terms of Use (these "Terms") are provided by DICK'S and are applicable to all DICK'S operations at or through our websites, our mobile/tablet sites, our social media presence, our applications, and our stores/locations.
>
> …
>
> **PLEASE READ THESE TERMS CAREFULLY BEFORE USING THE SITE. YOUR ACCESS AND/OR USE OF THE SITE CONFIRMS YOUR UNCONDITIONAL ACCEPTANCE OF THE FOLLOWING TERMS. IF YOU DO NOT FULLY ACCEPT THESE TERMS, DO NOT USE OR ACCESS THE SITE.**

Lutz Decl., Ex. A. (bold and all caps in original)). And as previously stated, the Terms of Use clearly state the user is waiving any right to a class action and agrees to arbitrate all disputes between the parties. Lutz Decl., Ex. A.

Plaintiff's claim involves a DSG application—the Text Alerts program. Further, Plaintiff accessed the enrollment code for the program by using DSG's website. Plaintiff's TCPA claim is thus covered under the Terms of Use, which

1  apply to disputes arising from activity on DSG's website and its applications.

2      This case is distinguishable from *In re Jiffy Lube Intern., Inc. Text Spam Litig.*,

3  847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2013), which Plaintiff relies on. (Resp. at 16-

4  17.) In *Jiffy Lube*, the language of the arbitration agreement was so broad that it

5  arguably covered any and all disputes between the parties, including a tort action

6  arising from a completely separate incident. Such a clause was unconscionable. *Id.*

7  at 1263. The court also held that if the arbitration clause was limited to the context

8  of the contract—a trip to Jiffy Lube by the defendant to get an oil change—it would

9  not encompass the unrelated TCPA claims. *Id.*

10      That is not the case here. Plaintiff's TCPA claims derive directly out of his

11  visit to DSG's website and his decision to opt in to DSG's mobile alerts program.

12  Those activities are covered by the Terms of Use. Further, DSG's Terms of Use is

13  not so broad as to encompass all disputes between the parties. It is properly

14  narrowed to DSG's online and mobile application activities.

15      Plaintiff received texts from DSG because he enrolled in the Text Alerts

16  program on DSG's website. DSG did not coincidentally text Plaintiff to market a

17  promotion. This TCPA dispute arises out of Plaintiff's visit to DSG's website and

18  use of DSG's applications. Considering the presumption that extends to arbitration

19  agreements, under these facts Plaintiff's claims clearly falls within the scope of the

20  arbitration clause. *See Republic of Nicar.*, 937 F.2d at 475; *Coppock v. Citigroup, Inc.*,

21  No. C11-1984-JCC, 2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013).

22  **C.   The Terms of Use's class action waiver is enforceable.**

23      Section 2 of the FAA does not permit state rules on "contract defenses, such

24  as fraud, duress, or unconscionability" to invalidate arbitration agreements if to do

25  so would "stand as an obstacle" to the accomplishment of the FAA's objectives.

26  *Concepcion*, 563 U.S. at 333. Arbitration is a matter of contract and the FAA's

27  "over-arching purpose is to ensure the enforcement of arbitration agreements

28  according to their terms," including those terms where the parties agree "*with*

*whom*" they will arbitrate. *Id.* at 334 (emphasis added) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010)).

The Supreme Court's holding in *Concepcion* makes clear that class action waiver provisions in arbitration agreements cannot be invalidated under state laws as unconscionable for being, among other things, contracts of adhesion. *Concepcion*, 563 U.S. at 346 (holding that the FAA preempts the California Supreme Court's holding in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005)); *Murphy v. DIRECTV, Inc.*, 2011 WL 3319574, at *4 (C.D. Cal. Aug. 2, 2011). The Supreme Court noted that "[t]he times in which consumer contracts were anything other than adhesive are long past." *Concepcion*, 563 U.S. at 347. Indeed, "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 344.

The Terms of Use state that Plaintiff he "waive[s] all rights to trial by jury and waive all right to commence or participate in any class action, consolidated, representative or class proceedings." It further states in bold print that "**[a]ny dispute resolution proceedings relating to these Terms or the Site will be conducted only on an individual basis and not as a class…and the parties expressly waive[s] all rights to commence or participate in any class, consolidated or representative action/proceeding.**" These waivers are enforceable under *Concepcion*, thereby requiring Nghiem to pursue arbitration in his individual capacity.

## D. The arbitration clause and class action waiver survives beyond the "termination" of Nghiem's contract with DSG.

The arbitration clause in DSG's Terms of Use survives beyond Plaintiff's attempts to opt-out. An arbitration clause will apply to a "postexpiration grievance" when it "involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the

disputed contractual right survives expiration of the remainder of the agreement. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 212 (1991). Plaintiff's grievance arises directly out of DSG's purported failure to comply with the terms of the parties' contract, which Plaintiff alleges obligated DSG to stop sending text messages upon receipt of the STOP keyword.

Plaintiff cannot cite any authority to support the proposition that an arbitration clause will not apply to a TCPA violation that is a continuation of the service provided in the contract. In fact, many courts have enforced arbitration agreements following termination of a contract. *See, e.g.*, *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013) (telephone calls relating to failure to make payments on account were sufficiently "related to" the account covered by the arbitration clause; *McNamara v. Royal Bank of Scotland Group, PLC*, 11-cv-2137-L WVG, 2012 WL 5392181, at *7 (S.D. Cal. Nov. 5, 2012) (same); *Coppock v. Citigroup, Inc.*, C11-1984-JCC, 2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013) (TCPA claims related to calls to collect a debt after termination of the contract were arbitrable even where the calls were based on a mistaken debt); *Brown v. DIRECTV, LLC*, CV 12-08382 DMG EX, 2013 WL 3273811, at *3 (C.D. Cal. June 26, 2013) (arbitration clause enforceable for TCPA violation occurring months after termination of contract because the calls related to a debt accrued under the contract). *C.f. Holcombe v. DIRECTV, LLC*, 4:15-CV-0154-LMM, 2016 WL 526244, at *4 (N.D. Ga. Feb. 9, 2016) (after Plaintiff's DIRECTV account was cancelled and his final bill was paid, Defendant called him *for the purpose of selling Plaintiff a new subscription*). Plaintiff's claims are based on the same **exact** activity that was the subject of his alleged contract with DSG. There was no intervening time, changed circumstances, or altered purpose. The arbitration clause therefore survives the "termination" of the contract with regard to the text messages at issue here.

**E.    Plaintiff's self-serving statement that he did not consent to arbitration is insufficient to avoid enforcement of an arbitration clause.**

When the parties met and conferred about this Motion, counsel for Nghiem suggested he would produce a declaration from his client contradicting the evidence that he consented to submit his claims to arbitration. Numerous courts have compelled arbitration where a plaintiff's only evidence is an unsupported statement that he or she did not consent to arbitrate. *See*, *e.g.*, *Stinger v. Chase Bank, USA, NA*, 265 Fed. Appx. 224, 2008 U.S. App. LEXIS 2751, at *7–*8 (5th Cir. Feb. 7, 2008) (unpublished order) ("First, [plaintiff] argues that no valid agreement to arbitrate existed between him and Chase because he never received the CMAs. Given that [plaintiff]'s only evidence was his own unsupported statement that he had not received either CMA, the district court did not commit clear error when it decided to credit [Chase Senior Director's] statement [in an affidavit] that Chase did send [plaintiff] the CMAs along with his credit cards."); *Cline v. Chase Manhattan Bank USA*, No. 2:07-CV-650 (DAK), 2008 WL 4200154, at *7 (D. Utah Sept. 12, 2008) ("The court concludes that Plaintiff's unsupported objections to Defendant's motion do not provide sufficient grounds to adequately contest confirmation of the arbitration award."); *Walters v. Chase Manhattan Bank*, No. 07-CV-0037 (FVS), 2008 WL 3200739, at *3 (E.D. Wash. Aug. 6, 2008) ("Defendant has submitted convincing evidence that a valid and enforceable arbitration agreement existed between Plaintiff and Defendant. Although Plaintiff's self-serving declaration claims otherwise, the facts demonstrate that Plaintiff received notice of the arbitration agreement by mail, the notice validly amended the cardholder agreement to include an arbitration clause, Plaintiff did not object to the arbitration clause after receipt of the notice, and Plaintiff continued to use the account after being notified of the arbitration agreement. Based on the foregoing facts, it is apparent that Plaintiff agreed to binding arbitration."); *Reeves v. Chase Bank USA, NA*, No.4:07-CV-1101 (HEA), 2008 WL 2783231, at *4 (E.D. Mo. Jul.

15, 2008) ("Plaintiff's only evidence is her own declaration that she had not received [the agreement]…This vague and conclusory declaration fails to dispute the authenticity of the cardmember agreement provided by Defendant.").

**F.   The Arbitration clause and class action waiver extend to any claims Plaintiff may have against Zeta.**

Plaintiff filed a First Amended Complaint naming DSG's partner in the Text Alerts program, Zeta, as a defendant. Zeta properly joins this motion to compel arbitration even though it is not a signatory to the Terms of Use. The Ninth Circuit has established that "nonsignatories [defendants like Zeta] can enforce arbitration agreements as third party beneficiaries." *Id.* (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)). "[T]hose who have not signed a contract containing an arbitration clause may sometimes benefit from it through doctrines such as assumption, agency, veil-piercing/alter ego, and estoppel." *Kingsley Capital Management, LLC v. Sly*, 820 F. Supp. 2d 1011, 1018 (D. Ariz. 2011) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009); *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)).

**1.   Equitable Estoppel establishes Zeta's standing in this motion.**

Equitable estoppel applies when a party claiming the benefits of a contract simultaneously seeks to avoid the burdens of that contract. *See Mundi*, 555 F.3d at 1045–46; *Kingsley*, 820 F.Supp.2d at 1023. In *Mundi*, the Ninth Circuit recognized two lines of cases applying equitable estoppel in the arbitration context: (1) those in which a nonsignatory may be held to an arbitration agreement where that party "knowingly exploits" or takes advantage of that agreement despite not having signed it, and (2) those in which a signatory may be required to arbitrate with a nonsignatory because of a close relationship between the parties involved and "'the fact that the claims [a]re intertwined with the underlying contractual obligations.'" 555 F.3d at 1046 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)).

In the present case, the signatory to the Terms of Use (Plaintiff Nghiem) is required to arbitrate with a nonsignatory (Defendant Zeta) because of (1) the close relationship between DSG and Zeta (Zeta is DSG's partner and runs DSG's Text Alerts program) and (2) the fact that Plaintiff's claims are intertwined with the underlying contractual obligations of the Terms of Use, including to arbitrate any disputes. Equitable estoppel should apply to Nghiem because he benefitted from the use of DSG's site and the Text Message program administered by Zeta under the Terms of Use contract, yet is now trying to avoid the burdens of that contract's arbitration requirements. *See In Lucas v. Hertz Corp.*, No. C 11–01581, 2012 WL 2367617, *7 (N.D. Cal. June 21, 2012) (nonsignatory Hertz Rental Car could compel arbitration of plaintiff's claims because an arbitration clause in a car-rental contract between the plaintiff and Hertz's licensee, Costa–Rica Rental Car, because plaintiff received benefits from Hertz under the car rental contract, and all of the plaintiff's claims against Hertz rested on the terms of that contract); *Sourcing Unlimited, Inc. v. Asimco Intern., Inc.*, 526 F.3d 38, 48 (1st Cir. 2008) (plaintiff's claims against a nonsignatory "ultimately derive from benefits it alleges are due it under the partnership Agreement" and were therefore subject to that agreement's arbitration clause); *see also Sanders v. Swift Transp. Co. of Arizona, LLC*, 843 F. Supp. 2d 1033 (N.D. Cal. 2012); *PRM Energy Systems, Inc. v. Primenergy, LLC*, 592 F.3d 830 (8th Cir. 2010); *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010).

### 2. Zeta is a Third Party Beneficiary to the Terms of Use.

Defendant Zeta can also enforce the arbitration agreement against Plaintiff Nghiem as a third party beneficiary of the Terms of Use contract. The Ninth Circuit has firmly established that nonsignatories can enforce arbitration agreements as third party beneficiaries. *Comer*, 436 F.3d at 1101. This "requires a showing that the parties to the contract intended to benefit a third party." *Britton v. Co-op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993).

In the present case, the Terms of Use contract plainly was intended to benefit DSG's partners such as Zeta, which administers the Text Alerts program that is the subject of this lawsuit. Zeta did not provide some incidental performance under the Terms of Use, it actually operated the Text Alerts program Plaintiff signed up for, the same Text Alerts program Plaintiff assented to arbitration under the Terms of Use contract. If there ever was an intended third party beneficiary of an arbitration provision, it would be Zeta in this circumstance. Otherwise, Plaintiff would be able to sign up for the Text Alerts program and attempt to entirely avoid the consequences of its assent to arbitration.

## G.   The Court should dismiss the complaint, or in the alternative stay further proceedings pending the conclusion of the arbitration.

DSG respectfully requests that the Court dismiss the FAC per FRCP 12(b)(1), (b)(3) and/or (b)(6), or in the alternative stay further proceedings pending the conclusion of the arbitration. Section 3 of the FAA permits this Court to stay this action pending the conclusion of individual arbitrations between the Plaintiffs and Defendants. *See* 9 U.S.C. § 3.

In any lawsuit "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. If the issues in the litigation fall within the scope of the arbitration agreement, the court has no discretion to deny the stay. *Alexander v. Anthony Int'l L.P.*, 341 F.3d 256, 263 (3rd Cir. 2003). As discussed above, the Terms of Use between DSG and Nghiem is valid and clearly encompasses the claims at issue in the FAC. As a result, the Court should compel Nghiem and DSG to binding arbitration and stay this action pending the conclusion of that proceeding.

This Court also has the discretion to dismiss, rather than stay this action. In *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988), the Ninth Circuit affirmed the district court's decision to dismiss, rather than stay, the plaintiffs

lawsuit on the ground that all claims were subject to arbitration. The Ninth Circuit concluded that "the arbitration clause was broad enough to bar all of plaintiffs' claims since it required [plaintiff] to submit all claims to arbitration." *Id.* at 638. *See also Daoud v. Ameriprise Fin. Serv., Inc.*, 2011 WL 6961586, at *6 (C.D. Cal. 2011) ("the class action waiver is enforceable, leaving only Ms. Dauod's individual claims remaining in this action. Because those claims are subject to arbitration, the Court finds that dismissal of the action is appropriate.")

In this case, a dismissal is appropriate, since the claims asserted fall squarely within the scope of the arbitration clauses, and because the prohibition against consolidated or class arbitration is enforceable.

## H.   Alternatively, the Court should order limited discovery on the issue of whether Nghiem's claims are subject to arbitration.

Should the Court decide it has insufficient information to compel arbitration and stay this Lawsuit, it should order phased discovery about the degree to which Nghiem is familiar with the Terms of Use. FRCP 1 provides that the Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." In addition, the Rules of Civil Procedure provide courts with inherent power to manage and control discovery. *See Buffington v. Baltimore County*, 913 F.2d 113, 132 n. 15 (4th Cir. 1990); *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *see also Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 750, 756 (11th Cir. 1985) (noting that "[d]istrict courts have great discretion over discovery matters").

Numerous courts have interpreted the foregoing rules to allow for limited discovery on arbitrability before embarking on costly, time-consuming, and possibly avoidable litigation. *See, e.g., Newton v. Clearwire Corp.*, No. 2:11-CV-00783-WMS-DAD, 2011 WL 4458971, at *6–*8 (E.D. Cal. Sept. 23, 2011) (permitting limited pre-arbitration discovery regarding unconscionability); *Plows v. Rockwell Collins, Inc.*, No. SACV 10-01936 DOC (MANx), 2011 WL 3501872, at *5 (C.D. Cal. Aug.

9, 2011) (permitting four months to conduct discovery on the enforceability of the arbitration agreement); *Laguna v. Coverall N. Am., Inc.*, No. 09cv2131 (BGS), 2011 WL 3176469, at *7 (S.D. Cal. Jul. 26, 2011) (permitting limited discovery, narrowly tailored to determining whether arbitration clause is enforceable under state law); *Hamby v. Power Toyota Irvine*, 798 F. Supp. 2d 1163, 1164–65 (S.D. Cal. 2011) (permitting limited pre-arbitration discovery on issue of unconscionability); *Larsen v. J.P. Morgan Chase Bank, N.A.*, Nos. 10-12936, 10-12937, 2011 WL 3794755, at *1 (11th Cir. Aug. 26, 2011) (vacating order denying a motion to stay pending arbitration and remanding with instructions to reconsider in light of the Supreme Court's decision in *Concepcion* and that "discovery is to be limited to issues bearing significantly on the arbitrability of this dispute until the question of arbitrability has been decided.").

Accordingly, the Court should permit DSG to take discovery with respect to the narrow issue of whether Nghiem agreed to submit his claims to arbitration. In the alternative, if the Court does not believe phased discovery is appropriate, this Court should dismiss this Motion without prejudice so that Defendants can utilize the discovery process to prove that Nghiem's case.

## I.   CONCLUSION

For the foregoing reasons, DSG respectfully requests that the Court enter an order (1) compelling Nghiem to submit his individual claims to binding arbitration, and (2) dismissing or staying Nghiem's action pending the conclusion of that arbitration. Alternatively, the Court should order phased discovery on the extent to which Nghiem is familiar with the Terms of Use and is bound thereby. If necessary, Defendants ask for ten (10) days from the Order on this Motion to answer or otherwise respond to the First Amended Complaint should this case not be ordered to arbitration.

Dated: June 13, 2016                    Respectfully Submitted,

**NEWMAN DU WORS LLP**

John Du Wors, State Bar No. 233913
*john@newmanlaw.com*
Nathan Durrance, State Bar No. 229210
*nathan@newmanlaw.com*
Samantha Everett, State Bar No. 234402
*samantha@newmanlaw.com*

Attorneys for Defendants
Dick's Sporting Goods, Inc. and
Zeta Interactive Corporation

26
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION