1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**SOUTHERN DIVISION**

11

12

| | |
|---|---|
| ) | **Case No.: SACV 16-00097-CJC(DFMx)** |

13

**PHILLIP NGHIEM,**

14

15

**Plaintiff,**

**ORDER DENYING DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF**
**STANDING**

16

**v.**

17

**DICK'S SPORTING GOODS, INC.,**
**ZETA INTERACTIVE**

18

**CORPORATION, and DOES 1–10,**

19

20

**Defendants.**

21

22

23

24

**I.  INTRODUCTION**

25

26      Plaintiff Phillip Nghiem brings this putative class action against Defendants Dick's

27   Sporting Goods, Inc. ("DSG"), and Zeta Interactive Corporation ("Zeta") for violations of

28   the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.*  (*See* Dkt.

1   33 [First Amended Complaint, hereinafter "FAC"].)  Before the Court is Defendants'

2   motion to dismiss for lack of standing.  (Dkt. 68 [hereinafter "Mot."].)  For the following

3   reasons, the motion is DENIED.

4

5   **II.  BACKGROUND**

6

7       Nghiem is a plaintiffs' attorney who handles consumer and debtor disputes,

8   including TCPA claims.  (Mot. at 9 (citing Dkt. 47-6 Ex. A [hereinafter "Nghiem Dep."]

9   at 20:03–07).)  DSG operates sporting goods stores throughout the United States.  (FAC

10  ¶ 9.)  DSG utilizes a marketing program centered on "mobile alerts"—text messages sent

11  to subscribers.  (*Id.* ¶ 18.)  Defendant Zeta is a marketing company that operates the

12  mobile alerts program for DSG.  (*Id.*)  Consumers can sign up for the mobile alerts

13  program on DSG's website or send a text message with the word "JOIN" to a number

14  associated with DSG, called a "short code."  (*Id*. ¶ 19.)

15

16      According to the FAC, on or about February 20, 2015, Nghiem enrolled in DSG's

17  mobile alerts program by texting the word "JOIN" to DSG's short code.  (*Id.* ¶ 23.)

18  Thereafter, on or about December 6, 2015, Nghiem texted the word "STOP" to that same

19  short code, indicating that he no longer wished to receive mobile alerts from DSG.  (*Id.*

20  ¶ 24.)  DSG sent Nghiem a text message indicating that he had unsubscribed and would

21  no longer receive mobile alerts.  (*Id.*)

22

23      Despite this confirmation, the FAC alleges that DSG continued to send Nghiem

24  text messages on at least nine occasions between December 11, 2015, and January 22,

25  2016.  (*Id.* ¶ 25.)  Nghiem asserts that each of the nine messages was sent by an

26  automatic telephone dialing system after Nghiem revoked his consent, in violation of the

27  TCPA.  (*Id.* ¶¶ 25–26.)

28

The FAC defines the class as "[a]ll persons in the United States and its territories who, within four years prior to the commencement of this litigation, were sent, using an automatic dialing system, any text messages by or on behalf of [DSG] to their cellular telephone and who did not consent to receive such messages." (*Id.* ¶ 27.) The FAC alleges that, as a result of Defendants' conduct, Nghiem and the rest of the class members "have had their privacy rights violated, have suffered actual and statutory damages, and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, among other things, a minimum of $500.00 in damages for each of Defendants' violations of the TCPA." (*Id.* ¶ 38.) The FAC seeks statutory damages, treble damages, attorneys' fees, and an order certifying a class. (*See id.* at 10.)

On October 27, 2016, Defendants filed the instant motion, contending that Nghiem lacks standing to bring this action.[1] (Mot.)

## III.  DISCUSSION

Defendants argue that Nghiem does not have standing to bring this action in light of the Supreme Court's recent opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016), because Nghiem has not alleged a concrete and particularized injury in fact as required by Article III of the Constitution. (Mot. at 3–8.) In the alternative, they argue that Nghiem does not have prudential standing. (*Id.* at 9.) The Court considers each argument in turn.

---

[1] Although Defendants style their motion as a motion to dismiss, they cite the legal standard for a motion for judgment on the pleadings, (Mot. at 3), and Nghiem treats Defendants' motion as a motion for judgment on the pleadings, (Dkt. 75 [Opposition, hereinafter "Opp."]). This is likely because Defendants have already filed an answer to the Complaint. (Dkt. 59). However, there is no deadline to file a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. "Indeed, '[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).

### A.  Article III Standing

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  With regard to the first element, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

The parties fundamentally disagree on the scope of *Spokeo*—particularly as it applies to TCPA cases.  In *Spokeo*, the plaintiff brought a class action lawsuit against the operator of a "people search engine" for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, upon discovering that the information the defendant had gathered and disseminated online about the plaintiff was incorrect.  *Spokeo*, 136 S. Ct. at 1544.  The FCRA "imposes a host of requirements concerning the creation and use of consumer reports," including the requirement that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of" consumer reports.  *Id.* at 1545 (citing 15 U.S.C. § 1681e(b)).  Both actual and statutory damages are available for FCRA violations.  *Id.* (citing 15 U.S.C. § 1681n(a)).  The Ninth Circuit had reversed the district court ruling that the plaintiff lacked standing and held that the plaintiff alleged adequate injury in fact, based on allegations that the defendant had violated *his* statutory rights, and that his personal interest in the handling of his credit information was sufficiently particularized.  *Id.* at 1545.

The Supreme Court vacated the decision and remanded it to the Ninth Circuit because it had not considered *both* aspects of the injury in fact analysis: whether the injury was concrete *and* particularized.  (*Id.*)  The Supreme Court went on to explain that

1  in some instances "Congress may 'elevat[e] to the status of legally cognizable injuries

2  concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 1549 (quoting

3  *Lujan*, 504 U.S. at 578).  However, "Article III standing requires a *concrete* injury even

4  in the context of a statutory violation.  For that reason, [the plaintiff] could not, for

5  example, allege a bare procedural violation, divorced from any concrete harm, and satisfy

6  the injury-in-fact requirement of Article III." *Id.* (emphasis added).  On the other hand,

7  "the violation of a procedural right granted by statute can be sufficient in some

8  circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need

9  not allege any additional harm beyond the one Congress has identified." *Id.*  Finally, the

10  Court noted that "[a] violation of one of the FCRA's procedural requirements may result

11  in no harm . . . not all inaccuracies cause harm or present any material risk of harm.  An

12  example that comes readily to mind is an incorrect zip code.  It is difficult to imagine

13  how the dissemination of an incorrect zip code, without more, could work any concrete

14  harm." *Id.* at 1550.

15

16      Here, Defendants argue that Nghiem lacks standing because he has alleged only

17  the "bare allegations of 'actual damages' and a 'privacy violation,' but fails to identify

18  any impacts from the alleged TCPA violation."  (Mot. at 1.)  The Court disagrees that

19  Nghiem's allegations are insufficient.  In contrast with a FCRA violation, which "*may*

20  result in no harm," *Spokeo*, 136 S. Ct. at 1550, a TCPA violation entails inherent harms

21  sufficient to establish injury in fact.  The TCPA codified a remedy for injuries that

22  *already existed* in order to curb the problem of unwanted telemarketing calls.  In

23  determining that the TCPA encompasses text messages as well as telephone calls, the

24  Ninth Circuit described the purpose of the TCPA as follows:

25

26          The TCPA was enacted to "protect the privacy interests of
            residential telephone subscribers by placing restrictions on
27          unsolicited, automated telephone calls to the home and to
            facilitate interstate commerce by restricting certain uses of
28          facsimile machines and automatic dialers." S. Rep. No. 102-

1

2

3

4

5

6
     178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968.  The
     TCPA was enacted in response to an increasing number of
     consumer complaints arising from the increased number of
     telemarketing calls.  *See id.* at 2.  The consumers complained
     that such calls are a "nuisance and an invasion of privacy."  *See*
     *id.*  The purpose and history of the TCPA indicate that
     Congress was trying to prohibit the use of ATDSs to
     communicate with others by telephone in a manner that would
     be an invasion of privacy.

7

8  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  Thus, "[u]nlike

9  the statute at issue in *Spokeo* . . . the TCPA section at issue does not require the adoption

10  of procedures to decrease *congressionally-identified* risks. . . .  It directly forbids

11  activities that *by their nature* infringe the privacy-related interests that Congress sought to

12  protect by enacting the TCPA. . . .  In any event, section 227 establishes substantive, not

13  procedural, rights to be free from telemarketing calls consumers have not consented to

14  receive."  *A.D. v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 4417077, at *6–7

15  (N.D. Ill. Aug. 19, 2016) (emphasis added).  For this reason, "other district courts have

16  similarly distinguished statutory violations of the TCPA from statutory violations of the

17  FCRA in the wake of the Court's *Spokeo* decision."  *Cabiness v. Educ. Fin. Sols., LLC*,

18  No. 16-CV-01109-JST, 2016 WL 5791411, at *5 (N.D. Cal. Sept. 1, 2016) (citing *Mey v.*

19  *Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *3 (N.D. W. Va. June 30,

20  2016) (noting that the concern in *Spokeo* about a "'bare procedural violation, divorced

21  from any concrete harm' . . . has little application to claims under the TCPA, since those

22  claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of

23  actions directed toward specific consumers.")).

24

25    Unlike FCRA violations, TCPA violations necessarily cause harm to consumers.

26  For example, *Cabiness* explained that "[e]very unconsented call through the use of an

27  [Automatic Telephone Dialing System] to a consumer's cellular phone results in actual

28  harm: the recipient wastes her time and incurs charges for the call if she answers the

1   phone, and her cell phone's battery is depleted even if she does not answer the phone."

2   *Cabiness*, 2016 WL 5791411, at *5.  "In addition to these tangible harms, unsolicited

3   calls also cause intangible harm by annoying the consumer."  *Id.*  Although the *Cabiness*

4   decision was limited because the plaintiff had alleged *additional* harms such as "stress

5   and anxiety," *see id.*, the Court finds the *Cabiness* reasoning instructive here.

6

7       Defendants rely on a few district court cases decided after *Spokeo* which assert that

8   a TCPA violation on its own is not sufficient to constitute injury in fact.  (Mot. at 4–8

9   (citing *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL

10   4184099 (S.D. Cal. Aug. 5, 2016); *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816,

11   2016 WL 3598297 (E.D. La. July 5, 2016); *Smith v. Aitima Med. Equip., Inc.*, No.

12   EDCV1600339ABDTBX, 2016 WL 4618780 (C.D. Cal. July 29, 2016)).)  In *Romero*,

13   the plaintiff alleged that the defendant called her 290 times using an automated telephone

14   dialing system over the course of six months.  *Romero*, 2016 WL 4184099, at *1.

15   *Romero* found that the plaintiff had not met her burden of establishing standing under

16   *Spokeo* because the fact "[t]hat Defendants called Plaintiff's cell phone may satisfy the

17   'particular' component, but it does not automatically satisfy the requirement that the

18   injury be 'concrete.'"  *Id.* at *3.  The *Romero* court reasoned that a TCPA violation did

19   not necessarily confer standing because "it is possible that the recipient's phone was not

20   turned on or did not ring, that the recipient did not hear the phone ring, or the recipient

21   for whatever reason was unaware that the call occurred."  *Id.*  The other cases on which

22   Defendants rely decided that the plaintiffs lacked standing for similar reasons.  *See Sartin*

23   *v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 WL 3598297, at *3 (E.D. La. July 5,

24   2016) ("Although Dr. Sartin has plausibly alleged that defendants violated the TCPA by

25   sending unsolicited fax advertisements, he fails to plead facts demonstrating how this

26   statutory violation caused him concrete harm."); *Smith v. Aitima Med. Equip., Inc.*, No.

27   EDCV1600339ABDTBX, 2016 WL 4618780, at *4 (C.D. Cal. July 29, 2016) ("Any

28   depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call,

1    is a de minimis injury . . . [which] is not sufficient to confer standing.”).

2

3        In light of the specific purpose and history of the TCPA, the Court agrees with

4    those federal courts that have criticized the *Romero* line of cases.  *See, e.g.*, *LaVigne v.*

5    *First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *6

6    (D.N.M. Oct. 19, 2016) (“Defendants have also offered *Romero* [to support lack of TCPA

7    standing], which is hardly convincing.  Under its rather draconian analysis, a plaintiff

8    would find it almost impossible to allege a harm as a result of these robocalls.  Worse, the

9    case ignores the existence of intangible harms that have been recognized in the legislative

10   history and in the case law.  The Court agrees with plaintiff that *Romero* is an outlier in

11   holding that a violation of the TCPA is a bare procedural violation and that some

12   additional harm must be shown to establish standing.”); *A.D.*, 2016 WL 4417077, at *7

13   (“The Court respectfully disagrees with the reasoning of the judge in *Sartin*.  In contrast

14   to statutes that impose obligations regarding how one manages data, keeps records, or

15   verifies information, section 227 of the TCPA directly prohibits a person from taking

16   actions directed at consumers who will be touched by that person’s conduct.  It does not

17   matter whether a plaintiff lacks additional tangible harms like wasted time, actual

18   annoyance, and financial losses.  Congress has identified that unsolicited telephonic

19   contact constitutes an intangible, concrete harm, and A.D. has alleged such concrete

20   harms that she herself suffered.  It would be redundant to require a plaintiff to allege that

21   her privacy and solitude were breached by a defendant’s violation of section 227, because

22   Congress has provided legislatively that a violation of section 227 is an invasion of the

23   call recipient’s privacy.”)

24

25       In this case, Nghiem alleges a concrete and particularized injury by laying out the

26   elements of a TCPA violation.  Additionally, Nghiem alleges that his privacy was

27   invaded when he received text messages from DSG after opting out of its mobile alerts

28   program.  (FAC ¶¶ 35, 38.)  This is precisely the type of harm that the TCPA was enacted

1 to prevent.  *Satterfield*, 569 F.3d at 954; *see, e.g.*, *Holderread v. Ford Motor Credit Co.,*

2 *LLC*, No. 4:16- cv-00222, 2016 WL 6248707, at *2 (E.D. Tex. Oct. 26, 2016) ("The

3 harm caused by unwanted phone calls is closely related to an invasion of privacy, which

4 is a widely recognized common law tort. . . .  Congress identified the intangible harm of

5 invasion of privacy as legally cognizable.  Considering this history and Congress's

6 judgment, the Court finds an invasion of privacy within the context of the TCPA

7 constitutes a concrete harm that meets the injury-in-fact requirements."); *Griffith v.*

8 *ContextMedia, Inc.*, No. 16-C-2900, 2016 WL 6092634, at *1–2 (N.D. Ill. Oct. 19, 2016)

9 ("The complaint also alleges that plaintiff 'lost time reading, tending to and responding

10 to' the unsolicited communications, and that the texts *invaded her privacy*.  Courts in this

11 district have held, both before and after the Court's decision in *Spokeo*, . . . that loss of

12 time and privacy are concrete injuries for the purpose of conferring Article III standing.")

13 (emphasis added); *Hewlett v. Consolidated World Travel, Inc.*, No. 16-713 WBS, 2016

14 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) ("Courts have consistently held that

15 allegations of nuisance and *invasion of privacy* in TCPA actions are sufficient to state a

16 concrete injury under Article III.") (emphasis added); *Krakauer v. Dish Network L.L.C.*,

17 No. 14-cv-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) (TPCA violations "are

18 more than bare procedural violations; here, Satellite Systems Network, Dish's alleged

19 agent, actually called the class members' numbers.  These calls form concrete injuries

20 because unwanted telemarketing calls are a disruptive and annoying *invasion of*

21 *privacy. . . .*  While class members did not necessarily pick up or hear ringing every call

22 at issue in this case, each call created, at a minimum, a *risk of an invasion of a class*

23 *member's privacy*.  *Spokeo* clarified that a 'risk of real harm' was enough to show

24 concrete injury.") (emphasis added); *Caudill v. Wells Fargo Home Mortgage, Inc.*, No.

25 16-cv-066, 2016 WL 3820195, at *2 (E.D. Ky. Jul. 11, 2016) ("These alleged harms,

26 such as *invasion of privacy*, have traditionally been regarded as providing a basis for a

27 lawsuit in the United States. . . .  Further, when Congress established the TCPA in 1991,

28 it did so to protect consumers from the 'nuisance, invasion of privacy, cost, and

1   inconvenience that autodialed and prerecorded calls generate.' . . . Based on *Spokeo*, the

2   Court is satisfied that Caudill has alleged an injury-in-fact that is concrete and

3   particularized.") (emphasis added).  Accordingly, Nghiem has standing to bring this

4   action.

5

6       **B.  "Zone of Interests"**

7

8       Defendants also argue that Nghiem lacks prudential standing because his interests

9   are not within the "zone of interests" that the TCPA was intended to protect.  (Mot. at 9.)

10  Defendants maintain that Nghiem "gratuitously tried to create the circumstances for a

11  TCPA violation so that he could bring a class action" by signing up for multiple text

12  message alert programs, all close in time, and all within the "same timeframe he was

13  filing TCPA class actions and sending TCPA demand letters to on behalf of his clients."

14  (*Id.*)  For example, they note that Nghiem's law firm sent DSG and its subsidiary demand

15  letters on behalf of clients complaining of TCPA violations resulting from DSG's mobile

16  alerts program around the same time that Nghiem signed up for the mobile alerts

17  program.  (*See id.*)

18

19      In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387

20  (2014), the Supreme Court recently "rejected the 'prudential standing' label and made

21  clear that whether a plaintiff's claims are within a statute's zone of interests is not a

22  jurisdictional question."  *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1156

23  (9th Cir. 2015) (citing *Lexmark*, 134 S. Ct. at 1387).  Rather, "whether a plaintiff comes

24  within 'the zone of interests' is an issue that requires us to determine, using traditional

25  tools of statutory interpretation, whether a legislatively conferred cause of action

26  encompasses a particular plaintiff's claim. . . .  As Judge Silberman of the D.C. Circuit

27  recently observed, 'prudential standing is a misnomer' as applied to the zone-of-interests

28  analysis, which asks whether 'this particular class of persons ha[s] a right to sue under

this substantive statute.'" *Lexmark*, 134 S. Ct. at 1387 (quoting *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675–76 (D.C. Cir. 2013) (Silberman, J., concurring)).

Defendants' "zone of interests" argument relies on extrinsic evidence regarding Nghiem's character and motivation for filing and litigating this action. (Mot. at 9.) The allegations of Nghiem's Complaint, however, unsurprisingly suggest nothing nefarious on his part, (*see generally* FAC), and Nghiem contests Defendants' proffered evidence and factual conclusions, (Opp. at 17–19). Thus, the statutory question of the TCPA's "zone of interests" involves disputed issues of material fact that cannot be resolved by the Court at this early stage of the case. *See Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) ("A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits. In such circumstances, no presumption of truthfulness attaches to the plaintiff's allegations. However, if the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Otherwise, the intertwined jurisdictional facts must be resolved at trial by the trier of fact." (internal citations omitted)). What matters at this early stage are the allegations of Nghiem's Complaint, and those allegations explicitly state that Nghiem opted out of DSG's mobile alerts program and yet continued to receive text messages from DSG that violated his privacy. (FAC ¶¶ 23–25.) This is all that is necessary for Nghiem to defeat Defendants' motion.

//

//

**IV.  CONCLUSION**

    For the foregoing reasons, Defendants' motion to dismiss for lack of standing is DENIED.


    DATED:     December 1, 2016

_____

                         CORMAC J. CARNEY

                   UNITED STATES DISTRICT JUDGE