UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PHILLIP NGHIEM,<br><br>        Plaintiff,<br><br>    v.<br><br>DICK'S SPORTING GOODS, INC., ZETA INTERACTIVE CORPORATION, and DOES 1–10,<br><br>        Defendants. | Case No.: SACV 16-00097-CJC(DFMx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

## I. INTRODUCTION

Plaintiff Phillip Nghiem brings this putative class action against Defendants Dick's Sporting Goods, Inc. ("DSG"), and Zeta Interactive Corporation ("Zeta") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.* (*See* Dkt.

33 [First Amended Complaint, hereinafter "FAC"].) Before the Court is Nghiem's motion for class certification. (Dkt. 71 [hereinafter "Mot."].) For the following reasons, the motion is DENIED.

## II. BACKGROUND

Nghiem is a plaintiffs' attorney who handles consumer and debtor disputes, including TCPA claims. (Dkt. 78-3 Ex. A [hereinafter "Nghiem Dep."] at 20:03–07.) DSG operates sporting goods stores throughout the United States. (FAC ¶ 9.) DSG administers a marketing program using "mobile alerts"—text messages sent to subscribers. (*Id.* ¶ 18.) Defendant Zeta is a marketing company that operates the mobile alerts program for DSG. (*Id.*) Consumers can sign up for the mobile alerts program on DSG's website or send a text message with the word "JOIN" to a number associated with DSG, called a "short code." (*Id.* ¶ 19.)

According to the FAC, on or about February 20, 2015, Nghiem enrolled in DSG's mobile alerts program by texting the word "JOIN" to DSG's short code. (*Id.* ¶ 23.) Thereafter, on or about December 6, 2015, Nghiem texted the word "STOP" to that same short code, indicating that he no longer wished to receive mobile alerts from DSG. (*Id.* ¶ 24.) DSG sent Nghiem a text message indicating that he had unsubscribed and would no longer receive mobile alerts. (*Id.*)

Despite this confirmation, the FAC alleges that DSG continued to send Nghiem text messages on at least nine occasions between December 11, 2015, and January 22, 2016. (*Id.* ¶ 25.) Nghiem asserts that each of the nine messages was sent by an automatic telephone dialing system after Nghiem revoked his consent, in violation of the TCPA. (*Id.* ¶¶ 25–26.) According to Defendants, this was the result of an inadvertent error on the part of a Zeta employee who implemented a programming change to the

mobile alerts program on or around November 16, 2015.[1]  (Dkt. 78 [Opposition, hereinafter "Opp."] at 5; Dkt. 78-7 [hereinafter "Meyer Decl."] ¶ 9.)  This mistake was remedied eleven weeks later on February 7, 2016.  (Meyer Decl. ¶ 13.)

Nghiem now seeks to certify the class as "[a]ll persons who, after opting-out of Dick's Sporting Goods, Inc.'s mobile alerts program, received unconsented text message advertisements from Defendants via Dick's mobile alerts program."  (Mot. at 5.)  The FAC alleges that as a result of Defendants' conduct, "Plaintiff and class members have had their privacy rights violated, have suffered actual and statutory damages, and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, among other things, a minimum of $500.00 in damages for each of Defendants' violations of the TCPA."  (FAC ¶ 38.)  The FAC seeks statutory damages, treble damages, attorneys' fees, and an order certifying a class.  (*See id.* at 10.)

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, district courts have broad discretion to determine whether a class should be certified.  *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001).  As a threshold matter, "plaintiffs must first define an ascertainable and identifiable class."  *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999) ("Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.").  To be ascertainable, "the description of the class [must be] definite enough so that it is

---

[1] The Opposition and supporting declaration identify this date as November 16, 2016, which is a typographical error.  (*See* Opp. at 6; Meyer Decl. ¶ 9.)

administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

The party seeking class certification also bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). Rule 23 is not merely a pleading standard—a party seeking class certification must affirmatively demonstrate compliance with the Rule by proving the requirements in fact. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(b) defines different types of classes. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2012). In this case, Nghiem seeks certification pursuant to Rule 23(b)(3), which allows certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

//
//
//
//

## IV. DISCUSSION

The Court first must find that the class is ascertainable and that the four requirements of Rule 23(a) have been met. The Court need only address the predominance and superiority requirements of Rule 23(b)(3) if it makes these necessary findings.[2]

### A. Ascertainable Class

Nghiem seeks to certify the following class: "All persons who, after opting-out of Dick's Sporting Goods, Inc.'s mobile alerts program, received unconsented text message advertisements from Defendants via Dick's mobile alerts program." (Mot. at 5.) He argues that this is an ascertainable class because Defendants have demonstrated during discovery that they maintain records sufficient to identify the owners of those mobile numbers encompassed in the class description. (*Id.*) In opposition, Defendants argue that the class definition would require "extensive individual inquiry" into the merits of the claims. (Opp. at 21.) However, Nghiem provides evidence showing that, in an effort to correct the mobile alerts program glitch at issue in this case, Defendants were indeed able to quickly identify over 2,000 individuals who would be removed from the mobile alerts program. (Dkt. 70-2 [hereinafter "Traina Decl."] Ex. 7.) Nghiem maintains that these very same individuals should make up the class, (Mot. at 5–6), and Defendants provide no reason why the Court should not rely on this number. Thus, the Court finds that the class is identifiable and ascertainable.

//

---

[2] Because the Court finds that Nghiem's claims are not typical of the claims of the class and that he cannot fairly and adequately represent the class, the Court need not determine whether the predominance and superiority requirements of Rule 23(b)(3) are met.

**B. Rule 23(a) Requirements**

**1. Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Plaintiffs are "not required to establish the precise number of class members, as long as common sense and reasonable inferences from the available facts show that the numerosity requirement is met." *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG SSX, 2013 WL 5789237, at *3 (C.D. Cal. Oct. 25, 2013). Nghiem reasonably estimates that the class has over 2,000 individuals. (Mot. at 6.) Again, this is based on Defendants' efforts to remedy the glitch in its opt-out program, which identified over 2,000 individuals who had to be removed from the mobile alerts program. (*See id.*) This estimate is not speculative. Since joinder of so many individuals would be impracticable, the Court finds that the numerosity requirement is met here.

**2. Commonality**

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Commonality requires the plaintiff to "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Nghiem argues that the class members all experienced the same violation of the TCPA and suffered the same injury—receipt of unconsented text messages after opting out of the mobile alerts program. (Mot. at 7.) Additionally, while the class members consented to the mobile alerts program in a number of ways, they opted out of the program in the same way—by texting one of a few key words to DSG's short code. (*Id.*) Thus, Nghiem argues that the issues in this case may be resolved "in one stroke"— questions such as "[1] Whether Defendants' conduct violated the TCPA; [2] whether Plaintiff and class members' use of a keyword revoked their prior consent to receive messages; [3] whether Plaintiff and class members are entitled to damages pursuant to the TCPA; and [4] whether Defendants' conduct requires the imposition of treble damages pursuant to the TCPA." (*Id.* at 8.) The Court agrees that factual circumstances surrounding the Defendant's alleged program glitch, and the related legal question of whether that constituted a violation of the TCPA, are common to all members of the class. Thus, the Court finds that the commonality requirement is also met here.[3]

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The purpose of the typicality requirement is to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

---

[3] Defendants unsuccessfully argue that "the circumstances and experiences of each putative class member are sufficiently varied and potentially dissimilar that they should be evaluated individually." (Opp. at 23.) They assert that the Court must decide whether each class member was on actual or inquiry notice of the DSG Terms of Use and are "thereby bound to DSG's Arbitration Agreement and Class Action Waiver." (*Id.* at 24.) The Court has already ruled that Nghiem was not bound by the Arbitration Agreement and Class Action Waiver because he did not have actual notice of DSG's terms and conditions and DSG's website did not put consumers on inquiry notice of its Terms of Use. (Dkt. 58.) Defendants offer no reason to suspect that if Nghiem, a sophisticated TCPA attorney, did not have actual notice of the terms and conditions, regular consumers would. *See id.*

"[A] named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)); *see also Alakozai v. Chase Inv. Servs. Corp.*, No. CV 11-09178 SJO JCX, 2014 WL 5660697, at *13 (C.D. Cal. Oct. 6, 2014) (denying class certification because "Plaintiffs' bankruptcy filings occurred after they filed the instant action, and were not disclosed in the bankruptcy proceedings, [so] it is predictable that a major focus of the litigation will be on a defense unique to them"). Absent class members will suffer if defenses unique to the class representative "threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508.

In *Hanon v. Dataproducts Corp.*, the Ninth Circuit denied class certification in a securities fraud action where the named plaintiff's "reliance on the integrity of the market would be subject to serious dispute as a result of his extensive experience in prior securities litigation, his relationship with his lawyers, his practice of buying a minimal number shares of stock in various companies, and his uneconomical purchase of only ten shares of stock in Dataproducts." *Id.* The Ninth Circuit reasoned that as a professional plaintiff with a practice of buying minimal shares, the named plaintiff's "unique background and factual situation" would require him to "prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class." *Id.*

In this case, Nghiem argues that his claims are typical of the proposed class because, like each member, he opted out of the mobile alerts program by texting a key word to DSG's short code but continued to receive text messages from DSG. (Mot. at 8–9.) Defendants, however, vehemently dispute that Nghiem is similarly situated with the rest of the proposed class. (Opp. at 27–30.) According to Defendants, Nghiem is an opportunistic and litigious TCPA attorney who was in search of a TCPA violation when

he enrolled in DSG's mobile alerts program. (*See id.*) Defendants contend that Nghiem had no genuine interest in DSG's promotions and was only manufacturing a lawsuit when he opted in and out of the mobile alerts program. (*See id.*)

It is undeniable that Nghiem is no ordinary class representative for a TCPA action. Nghiem is a plaintiffs' attorney specializing in consumer and debtor disputes. (Nghiem Dep. at 20:03–07.) He has represented plaintiffs in TCPA cases on at least six occasions. (*Id.* at 24:16–25:03.) He opted into DSG's mobile alerts program on February 20, 2015. (Meyer Decl. ¶ 6; FAC ¶ 23.) He enrolled in two other text message campaigns operated by Zeta for third-party companies between December 2014 and February 2015. (Meyer Decl. ¶¶ 6–7.) He also enrolled in several more promotional campaigns that were not operated by Zeta around the same time period. (*See* Nghiem Dep. at 52:15–59:25.) He does not appear to have taken advantage of any promotions through DSG's mobile alerts program. (*See id.* at 94:02–12.)

Two weeks after Nghiem enrolled in DSG's mobile alerts program, DSG's subsidiary Golf Galaxy received a letter from Nghiem's employer, Michael Manning of the Manning Firm, on behalf of a third-party client. (Dkt. 78-1 [Baran Decl."] ¶¶ 3, 5; *id.* Ex. 1.) The letter complained of TCPA violations resulting from DSG's mobile alerts program and demanded payment. (*Id.* Ex. 1.) According to the letter, this client received the first offending text message from DSG on February 5, 2015—two weeks *before* Nghiem signed up for DSG's mobile alerts program. (*See id.* ¶ 4; *id.* Ex. 1.) In fact, between March 10, 2015, and November 4, 2015, DSG and Golf Galaxy received a total of five demand letters from Nghiem's law firm on behalf of four different clients regarding TCPA violations. (*See id.* ¶ 3; *id.* Exs. 1–5.) These demand letters concern DSG's alleged failure to inform those who signed up for its mobile alerts program that the text messages would be sent using automated dialing technology. (*See id.* Exs. 1–5.) DSG did not pay the amounts demanded in these letters. (*Id.* ¶ 6.) Additionally, Nghiem

opted out of the text message program just one month *after* DSG received the last demand letter from Nghiem's firm. (*See id*. Ex. 5; FAC ¶ 24.)

Clearly, the typical member of the class does not share Nghiem's background and experience with the TCPA and DSG's mobile alerts program. The typical member of the class has no special knowledge of the TCPA nor experience litigating claims under the statute. The typical member of the class signed up for DSG's mobile alerts program because he or she was undisputedly interested in DSG's merchandise and looking to score a bargain. And most importantly, the typical member of the class opted in and out of DSG's mobile alerts program with the hope and expectation that his or her privacy would be respected and not invaded by unwanted text messages from DSG. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic telephone dialing systems] to communicate with others by telephone in a manner that would be an *invasion of privacy*." (emphasis added)) (citing S. Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968). While Nghiem's Complaint alleges that his privacy rights were violated, (*see* FAC ¶ 38), Defendants' evidence calls into question whether Nghiem could in fact have suffered in an invasion of privacy if he signed up for DSG's mobile alerts program for the specific purpose of finding a TCPA violation that could support a lawsuit.

Ninth Circuit authority directs district courts not to grant class certification if "'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp*, 903 F.2d at 180). Here, there is such a danger. Defendants will continue to dispute whether Nghiem opted in and out of DSG's mobile alerts program in good faith and if he suffered any invasion of privacy whatsoever. Indeed, Defendants will argue at every opportunity that (1) Nghiem fabricated this lawsuit, (*see, e.g.*, Dkt. 78

at 3–4, 27, 30 (contending that Nghiem "manufactured" this action)); (2) he welcomed and hoped for text messages that violated the TCPA, (*see, e.g.*, *id.* at 3–4 ("In fact, Plaintiff Nghiem has been hunting for a text messaging lawsuit since at least December, 2014.")); (3) he is perpetrating a fraud by claiming his privacy was invaded when he received more text messages from DSG after opting out of its mobile alerts program, (*see, e.g.*, *id.* at 28 ("Because Plaintiff does not have an injury, he does not share an injury with the putative class.")); and (4) he should not be awarded a penny for his lawyer shenanigans, (*see, e.g.*, *id.* at 31 (citing *Stoops v. Wells Fargo Bank, N.A.*, 2016 WL 3566266 (W.D. Pa. 2016) ("Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not 'among the sorts of interests [the TCPA was] specifically designed to protect.'")); Dkt. 68 ("The TCPA was not designed to protect TCPA attorneys like Nghiem who sign up for multiple text messaging programs in search of a class action.")). The major focus of this litigation will be on these issues and defenses unique to Nghiem, not on the claims of the class.[4] Consequently, the Court finds that Nghiem's claims are not typical of the class as is required by Rule 23(a).

### 4. Adequacy

Under Rule 23(a)(4)'s adequacy requirement, a plaintiff must establish that he "will fairly and adequately protect the interests of the class." To determine whether the representation meets this standard, the Court must ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing

---

[4] Defendants assert several affirmative defenses to Nghiem's claims, including fraud, waiver, and estoppel, and maintain that Nghiem is outside the TCPA's "zone of interests." (Dkt. 59 at 9–11; Opp. at 31, 18 n.57.) It does not matter whether Defendants will ultimately prevail on these defenses. What matters is that Defendants will assert these defenses, and they have a factual basis for doing so.

*Hanlon*, 150 F.3d at 1020); *see e.g.*, *Drimmer v. WD-40 Co.*, 343 F. App'x 219, 221 (9th Cir. 2009) (Affirming the district court's ruling that adequacy was not met because of "the combination of a personal relationship [and] landlord-tenant relationship" between the proposed class representative and his attorney, as well as his "inexplicable disinterest in pursuing all remedies available to him.").

Defendants argue that Nghiem is not an adequate class representative because he is subject to defenses that do not apply to the rest of the class and has no credibility. (Opp. at 29.) While these arguments primarily relate to typicality, "a named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). Additionally, "[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry 'because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'" *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (quoting *Searcy v. eFunds Corp.*, No. 08 C 985, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010). The Court is convinced that if Nghiem is the class representative, he and his counsel will have to devote most of their time and resources trying to refute Defendants' attacks on his character and his motivations for filing and litigating this lawsuit. This skewed focus and diversion of resources will come at the expense of Nghiem's ability to vigorously prosecute this case on behalf of the rest of the class and obtain monetary recovery for any members of the class who undisputedly had their privacy invaded when they received unwanted text messages from DSG. *See Satterfield*, 569 F.3d at 954 ("The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy."). Simply stated, Nghiem cannot fairly and adequately protect the interests of the class as is required by Rule 23(a).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification is DENIED.

DATED: December 1, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE